**In re James Joseph SAWAYA, Bankrupt.**

**MASSACHUSETTS HIGHER EDUCATION. ASSISTANCE CORPORATION, Plaintiff,**

**v.**

**James Joseph SAWAYA, Defendant.**

**Bankruptcy No. 79-0715-JG.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 3, 1979.

Henry L. McNulty, Boston, Mass., for Mass. Higher Education Assistance Corp.

Richard S. Weiss, Boston, Mass., for Sawaya and Cordischi.

**MEMORANDUM ON COMPLAINT TO DECLARE DEBT NON–DISCHARGEABLE**

JAMES N. GABRIEL, Bankruptcy Judge.

The defendant filed a voluntary petition in bankruptcy on April 16, 1979, listing eight unsecured creditors. Seven of the claims totalled only $2,711.39; the eighth was for $6,350.00 owed to the plaintiff herein.

The plaintiff, Massachusetts Higher Education Assistance Corporation, filed a complaint on May 23, 1979 contending that its claim against the defendant is non-dischargeable because it is "not an allowable debt under the Bankruptcy Laws" and because the defendant "is attempting to misuse the Bankruptcy Act for a purpose it was never intended."

The facts are simple and have been stipulated. The parties agreed to submit briefs on the question of law.

It was stipulated that the instant debt was a guaranteed educational loan in the amount of $5,852.03 made to the defendant by the State Street Bank and Trust Company of Boston, Massachusetts. This money was made available to the defendant over a four year period to assist him while a student at University of Massachusetts, Amherst. He graduated in June, 1976 and obtained employment as a phebotomist with a medical laboratory in Randolph, Massachusetts. He made four payments totalling $445.48 on his indebtedness and then payments ceased. All subsequent correspondence and calls to the defendant by the lending institution and Massachusetts Higher Education Assistance Corporation were ignored.

Plaintiff, Massachusetts Higher Education Assistance Corporation, is a Massachusetts corporation with an office at 1010 Park Square Building, Boston, and is an unsecured creditor of the defendant. Plaintiff repaid defendant's loan to the State Street Bank and Trust Company under its guaranteed loan program and thus became the assignee of said State Street Bank and Trust Company.

Defendant is 24 years old, single, and has no dependents. He is presently employed.

The enactment of 20 U.S.C. Sec. 1087–3 prevented federally guaranteed student loans from being discharged in bankruptcy in the absence of undue hardship. The subsequent enactment of the Reform Act substituted for and expanded the provisions of Title 20 with Section 523(a)(8) thereof. By the terms of Section 402(a) of the Reform Act, Section 523 was not made effective until October 1, 1979.

The plaintiff in its brief failed to argue the bases stated in its complaint. Rather, it argued that the debt was non-dischargeable because the provisions of 20 U.S.C. Section 1087–3 were not effectively repealed by the enactment of the Bankruptcy Reform Act of 1978 (BRA) P.L. 95–598, Stat. 2549–2688, as of November 6, 1978.

Plaintiff in pressing its argument contends that the "savings" provision of Section 403 of the BRA of 1978 was intended to apply so that no provision of the Reform Act was to affect any case or proceeding previously commenced under the previous Bankruptcy Act.

The defendant contends that the repeal of 20 U.S.C. Sec. 1087–3 was made effective on November 6, 1978 by Section 317 of the Bankruptcy Reform Act, while the substitute provision was not to take effect until October 1, 1979. Congressional action, therefore, created a "gap" period during which student loans are dischargeable.

The determination must be made as to the substantive law which was applicable at the time of filing of the bankruptcy petition, as it alone governs the rights of the parties. *In re Chris Calvin Carpenter,* 5 Bankr.Ct.Dec. 577 at 578 (D.Colo.1979). Bankruptcy court decisions as to the non-dischargeability of student loans based on petitions filed prior to November 6, 1978 and the repeal of Title 20 by BRA Section 317 may be helpful but are not controlling.

The plaintiff urges this court to follow certain dicta found in *N. Y. State Higher Education Service Corp. v. Taylor,* District of Maine, BK # 78–340–K, as well as the reasoning expressed in *Wisconsin Higher Education Aid Board v. Edson,* 4 Bankr.Ct. Dec. 1191, District of Nevada, 1979.

Although the dicta in the *Taylor* case does show a concern by the court as to whether the savings clause, BRA Sec. 403, in fact saves 20 U.S.C. 1087–3, the court admits that "a literal application of these provisions result in the repeal of 20 U.S.C. 1087–3, effective November 6, 1978, while subsection 403(a) with its savings provisions

in respect to cases pending under the Bankruptcy Act, has yet to become effective. . . . It is idle to ascribe nice legislative purpose to inadvertent congressional action," the court said, "but there is another basis for decision here." The court applied the law as it was at the time of the filing of the bankruptcy petition, pre November 6, 1978.

In *Edson,* which also was a pre November 6, 1978 petition, the court chose to go further and attempts to judicially correct congressional inadvertence.

After the *Edson* court succinctly recited the congressional history leading to the final compromise version of BRA Section 523(a)(8), the court acknowledged that:

> "the problem is the result of failure of the compromise between the House and Senate to correlate the repeal date with the enactment of the new law."

. . . . .

> "As the Senate version was adopted and enacted, the repeal provisions were not made simultaneous with the exemption provisions of Section 523(a)(8) effective October 1, 1979 but were prematurely effective upon enactment."

. . . . .

> "It thus appears that the savings provisions of Section 402 are not particularly made effective upon enactment allowing a hiatus between November 6, 1978 and October 1, 1979 as to the exception from discharge of a federally insured education loan."

In justification of its position the *Edson* court then says:

> "to apply a literal interpretation in this case would manifestly torture the intent of Congress."

This may be so but it was a legislative mistake and no amount of judicial mental gymnastics can change the plain meaning of what Congress did, even though it was not what was intended.

There is no question in anyone's mind that Congress did not intend to repeal 20 U.S.C. 1087–3 before BRA Section 523(a)(8) became effective. All of the cases which have addressed this issue are in agreement as to that intent, and I concur. Nevertheless, what Congress intended was not what it in fact did.

Similarly, this court has considered the opinion in *Wisconsin Higher Educational Aids Board v. Kristin J. Erickson,* 5 Bankr. Ct.Dec. 734 (E.D.Wisconsin 1979) which holds the debts non-dischargeable by refusing to literally interpret Section 439A of the Higher Education Act. The court said:

> ". . . where it is equally plain to the court that the effective date for the repeal of a statute was intended to coincide with the effective date of a new and superseding statute, but where a legislative error was made when drafting the statute, courts should not compound the error by disregarding the obvious intent of Congress." *Erickson* at page 735.

The above reasoning would be persuasive and I would have adopted it as of July 27, 1979, the date on which the opinion was released. However, some credence must be given to the corrective legislation subsequently enacted by Congress.

Apparent Congressional intent can no longer be presumed. On August 14, 1979, Congress passed P.L. 96–56, which amended Section 17a of the Bankruptcy Act and provided for non-dischargeability of student loans from that date. Clearly, Congress has knowledge that 20 U.S.C. Section 1087–3 was revoked by BRA Section 317 on November 6, 1978, while Section 402, by its terms, did not make the provisions of Section 523(a)(8) effective until October 1, 1979.

It seems likely that Congress, by recognizing the hiatus, made the determination to not interfere with any rights which the parties may have had, or which may have been judicially determined to exist between November 6, 1978 and August 14, 1979. Congress has left to the courts the determination of dischargeability of student loans during the gap period, and has done so in such a way as to not make vested rights immediately appealable.

This court follows *In re King,* 5 Bankr.Ct. Dec. 417 and *In re Kevin T. Cothren,* 5 Bankr.Ct.Dec. 597 (S.D.N.Y.1979), which hold that the Bankruptcy Reform Act of 1978 repealed 20 U.S.C. Section 1087–3 as of November 6, 1978. Section 402(a) of the BRA expressly states that October 1, 1979 is the effective date of sections not otherwise dealt with. Since the "savings" provision of Section 403(a) is not expressly mentioned in Section 402, its application is effectively postponed to October 1, 1979.

Plaintiff's contention that Congress intended the savings clause to be effective upon enactment of the Bankruptcy Reform Act of 1978 must be rejected since Congressional actions prove contra.

Although the U.S. District Court for Newark, N.J. found P.L. 96–56 ambiguous on its face, this court cannot agree. In *In re Hawes,* U.S. District Court, Newark, N.J. Civil Action No. B78–28, the court directly referred to Section 2 of P.L. 96–56 and interpreted that the reference therein to "this Act"[1] may have been intended to refer to either P.L. 96–56 or the Bankruptcy Reform Act. The result was the interpretation of the ambiguity so that Section 2 was found to refer to the latter. I find this rationale untenable for two reasons: first, P.L. 96–56 clearly states it to be "an Act"; second, it is absurd to believe that the 96th Congress, which passed the Reform Act and was subsequently enacting curative legislation, would again obfuscate the issue by being ambiguous.

Congress could have made P.L. 96–56 retroactive to November 6, 1978 and chose not to do so. The intent of Congress is clear. The corrective legislation admits the existence of the legal hiatus between November 6, 1978 and August 14, 1979.

I am appalled by the willingness of so many to desert their moral obligations. I am appalled that so many have shown so little regard for a program which was intended to assist them in their time of need, and because of their selfishness, jeopardize others who may be seeking the same assistance. If I could, I would not hesitate to find this and similar debts non-dischargeable. I would be equally remiss however in imposing my feelings upon others without legal justification.

I FIND as a matter of law, student loans are dischargeable in bankruptcy as to petitions filed subsequent to November 6, 1978 and prior to August 14, 1979.

Because all the essential facts and the questions of law are the same in the following cases, the opinion rendered herewith shall control the disposition of the complaints pending in these cases.

The complaint to determine dischargeability filed in this case is dismissed, as are the complaints filed *In re Maura K. Mansfield,* Bankruptcy No. 79–0365–JG; *In re Richard Joseph McDermott, Jr.,* 79–0589–JG; *In re Anthony D. Montecalvo, Jr.,* 79–0601–JG; *In re Robert Kulunis,* 79–0808–JG; and *In re Achille Angelo Cordischi,* 79–1003–JG.

---

[1] . . . with respect to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act and ending October 1, 1979. § 2 of P.L. 96–56 (1979).