In re Bruce Edward NARAMORE, Bankrupt.

NEW YORK STATE HIGHER EDUCA-TION SERVICES CORPORATION, Plaintiff,

v.

Bruce Edward NARAMORE, Defendant.

No. BK–77–2376.

United States District Court, N. D. New York.

March 18, 1980.

**710**

Lawrence W. O'Toole, Albany, N. Y. (Jonathan Rabinowitz, Marcia P. Hirsch, Albany, N. Y., of counsel), for plaintiff.

Goldberg & Sanders, Syracuse, N. Y. (Harold P. Goldberg, Syracuse, N. Y., of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

In this action, plaintiff-appellant, an education assistance corporation, appeals a decision by a bankruptcy judge dismissing its complaint, in which it objects to the discharge of defendant-appellee bankrupt's $9,500.00 student loan obligation.

### I. Facts

To finance his higher education, defendant Bruce Naramore made six separate ap-

plications to the Lincoln National Bank and Trust Company of Central New York, and eventually was advanced $9,500.00 in low interest student loans under the auspices of a federally insured student loan program. The program is authorized pursuant to 20 U.S.C. §§ 1071 *et. seq.*, and is designed to encourage lending banks to loan money to students at low interest rates, through assuring repayment of such loans by a state-run educational assistance corporation if the students should default. The educational assistance corporation is in turn reimbursed by the federal government when student defaults occur.

Defendant completed his education by obtaining a Bachelor of Arts degree from Bethany College, and a Master of Arts degree from Syracuse University. Afterwards he was able to find gainful employment with an annual salary of $11,600.00. But despite the financial security of his job, defendant defaulted on his loans and voluntarily petitioned for bankruptcy. Curiously, defendant did not offer the bankruptcy court a reason why the loans could not be repaid. It appears simply that defendant preferred not to repay them. Nonetheless, in compliance with the federal student loan program, plaintiff New York State Higher Education Services Corporation (HESC) purchased defendant Naramore's promissory note, thereby guaranteeing to Lincoln National Bank the repayment of his loans and becoming defendant's principal creditor.

At the same time, upon learning of defendant's attempt to discharge his student loans, plaintiff HESC commenced an adversary proceeding against him on December 14, 1977, in accordance with 20 U.S.C. § 1087–3, and objected to the discharge of the $9,500.00 federally guaranteed obligation. Basically, Section 1087–3 provides that a federally guaranteed student loan may only be discharged in bankruptcy if, upon five years after graduation, "the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents." [1]

A trial on the issue of whether defendant's loans could rightfully be discharged in bankruptcy was held on May 5, and 23, 1978, and neither the five year repayment period, or the undue hardship issues were raised by defendant as a defense. Instead, the reinsurance relationship between plaintiff HESC and the federal government became the central issue. Defendant contended at trial that plaintiff did not have a reinsurance relationship with the federal government, and, consequently, his loans were not within the scope of the federally insured student loan program or its discharge provision as embodied in Section 1087–3.

As the trial progressed, the bankruptcy judge pressed the issue of plaintiff HESC's relationship with the federal government, and asked plaintiff to supply written proof of the reinsurance relationship. Plaintiff searched for the written proof, but could not find any. As an alternative, plaintiff offered oral testimony in support of the existence of a reinsurance agreement,[2] but the bankruptcy judge insisted on reviewing written proof. The court concluded that because plaintiff HESC could not provide written proof, plaintiff was not about the business of providing federally guaranteed student loans, and the court dismissed its complaint.

On June 16, 1978, plaintiff moved to set aside the judgment and for a new trial

---

1. The legislative history of Section 1087–3 evinces Congress' concern that students had been able, previous to the passage of this provision, to use the bankruptcy laws as a tool to unfairly avoid repayment of their educational loans at the expense of the American taxpayer. 1976 U.S.Code Cong. & Admin.News, pp. 4713, 4731, 4733–47.

2. Plaintiff wanted to examine two of its employees on the issue of the reinsurance relationship between HESC and the federal government. The first witness, Patricia Ann Mullins, is a director of the Office of Loan Program Development, and has been employed by HESC for seventeen years. The other employee, Robert Lamber, is the Chief Student Loan Control Representative, and has been an employee of HESC for eleven years. These individuals did testify at trial but, as will be discussed later, the court limited the scope of their testimony.

based on the discovery of new evidence pertaining to the student loan program's federal-state reinsurance relationship.[3] The bankruptcy judge denied these motions, citing plaintiff's numerous opportunities to prove its case and its failure to take advantage of them. The present appeal was taken after the bankruptcy judge's decision on plaintiff's motions. Plaintiff asserts now that the judgment below should be set aside, and a new trial granted pursuant to Rule 59 of the Federal Rules of Civil Procedure, because evidence discovered since the trial would lead the bankruptcy court to decide this case differently. In addition, plaintiff alleges that the oral testimony it offered at trial to prove the existence of the federal-state reinsurance relationship was competent, and should have been admitted at trial by the bankruptcy judge.

To the contrary, defendant contends that the present appeal should be dismissed on the grounds that plaintiff has failed to properly perfect its appeal. According to defendant, the plaintiff, by now appealing the denial of its motion for a new trial, is trying to circumvent the damage to its case caused by its untimely filing of an appeal from the lower court's judgment. Defendant also asserts that because the new Bankruptcy Act, upon its enactment November 6, 1978, repealed the student loan discharge provisions of 20 U.S.C. § 1087–3, the instant appeal has been rendered moot. For the reasons stated below, the court disagrees with defendant and concludes that plaintiff should be granted a new trial.

## II. The Timeliness of Plaintiff's Appeal

Defendant argues that plaintiff's appeal is, in reality, from a denial of its motion for a new trial and not the bankruptcy court's original judgment, and that the scope of plaintiff's appeal must therefore be confined to the question of whether a new trial should be granted. Pursuant to Rule 802(b)(3) of the Rules of Bankruptcy Procedure, the running time for filing a notice of appeal is terminated by a timely filing of a motion to amend a court's judgment or for a new trial. *See* Moore's, Federal Practice § 59.15[1]. Moreover, Rule 802(a) provides a party with ten days after the court rules on the motion to file an appeal. In the instant case, therefore, plaintiff's motion to amend the bankruptcy court's judgment and for a new trial extended the finality of the court's original judgment. Plaintiff did in fact file its appeal within the ten days after its motions were denied, thus making this appeal timely.[4]

## III. The Effect of the New Bankruptcy Act

On November 6, 1978, the President signed into law a new Bankruptcy Act

---

**3.** Plaintiff's attorney intended to produce a supplemental written agreement dated August 5, 1977, which purports to prove that the September, 1968 agreement between HESC and the Office of Education had been verbally extended until August 5, 1977. This more recent agreement was found by plaintiff's attorney after the close of the trial.

**4.** Objections also were raised by the bankruptcy judge concerning the timeliness of plaintiff's motion for a new trial and appeal. The bankruptcy judge believed that Rule 812 of the Bankruptcy Rules of Procedure would preclude plaintiff from being granted a new trial because plaintiff filed its motion for a new trial eleven days after judgment was entered against it. By filing the motion on the eleventh day after judgment, the bankruptcy judge thought that it was barred, since Rule 812 provides only a ten day filing period. Plaintiff asserted below, however, that Rule 812 ought not control the

timing of a valid motion for a new trial, but that Rule 59 of the Federal Rules of Civil Procedure, pursuant to Rule 923 of the Bankruptcy Rules of Procedure, should be applied. Rule 59 requires that a motion for a new trial shall be served by mail to the opposing party not later than ten days after the entry of judgment. In that plaintiff mailed defendant the motion papers ten days after judgment was entered, plaintiff contends that its motion for a new trial was timely. This Court agrees with plaintiff.

Rule 812 is not applicable to a motion for a new trial, rather, its purpose is for a motion for a rehearing on an appeal to the federal district court. Pursuant to Rule 923 of the B.R.P., Rule 59, with its ten day service requirement, is applicable here. Because plaintiff mailed its motion to defendant on the tenth day after judgment was entered, the motion for a new trial was timely made. *See Parks v. Mr. Ford*, 68 F.R.D. 305 (E.D.Pa.1975).

which substantially amended the federal bankruptcy law. Certain procedural provisions of the Bankruptcy Act of 1978 became effective upon the date of enactment of the Act, rather than on the date when the substantive part of the Act became effective, which was on October 1, 1979. One such procedural provision, Section 402(d), repeals the student loan discharge provision, 20 U.S.C. § 1087–3. The repeal of this provision is in a sense only temporary because the new Bankruptcy Act adopts the exact same type of provision in its Section 523(a)(8). It appears that strangely, in repealing Section 1087–3 on November 6, 1978, and in adopting a similar provision effective October 1, 1979, an eleven-month hiatus was created, the effect of which was to temporarily remove petitions in bankruptcy from any special restrictions relating to the discharge of student loans. As a result, defendant contends that his student loan should be discharged.

Plaintiff argues that Congress' interim bankruptcy discharge "truce" does not effect the instant appeal, in that 1 U.S.C. § 109 provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Because the new Bankruptcy Act does not expressly "extinguish" the liability incurred under the old bankruptcy laws, plaintiff argues that defendant is still subject to the discharge criteria of Section 1087–3.

The court agrees with plaintiff and believes that Section 109 is applicable to this appeal. Although Section 1087–3 has been repealed by Section 402(d) of the Bankruptcy Act, it did not "so expressly provide" for immunity from suits filed previously to the date Section 1087–3 was repealed. Without such a qualifying clause, defendant's potential liability for full repayment of his student loan obligation has not been "extinguished" by the repeal provision of the new Bankruptcy Act. *See United States v. Provenzano*, 423 F.Supp. 662 (S.D.N.Y.1976), aff'd 556 F.2d 562 (2d Cir. 1977).[5]

## IV. The Mysterious Nine Year Gap

Defendant also asserted at trial that a gap existed from October. 31, 1968 through March 29, 1977, in the reinsurance agreement between plaintiff HESC and the federal government. Because of this gap, defendant alleged that his student loans were not federally guaranteed, and hence could not be subject to the Section 1087–3 discharge provision. In response to defendant's allegations before and during trial, the bankruptcy judge repeatedly demanded that plaintiff prove the existence of the reinsurance relationship between HESC and the federal government by written evidence. *See* e. g. May 5, 1978 transcript at

5. Since the commencement of this action, moreover, Congress has moved to fill the gap created by the repeal of 20 U.S.C. § 1087–3. The new Bankruptcy Act has been amended by H.R. 2807 effective August 14, 1979, in order to maintain the federally guaranteed student loan discharge provision through its reinstatement date, October 1, 1979. The Committee Report on H.R. 2807 called the temporary gap caused by the repeal of Section 1087–3 "very undesirable and totally inadvertent." S.Rep.No.96–230, 96th Cong., 1st Session, *reprinted in* (Sept. 1979), U.S.Code Cong. & Admin.News, pp. 1882, 1883. The intent behind H.R. 2807, says its authors, is to "maintain the status quo until such time as 11 U.S.C. § 528(a)(8) becomes effective." *Id.* Unfortunately, H.R. 2807 does not completely maintain the status quo because it still leaves a gap in coverage from November 6, 1978—the effective date of certain procedural provisions of the new Bankruptcy Act—and August 14, 1979, the effective date of the amendment. For this reason the present case falls outside of the parameters of H.R. 2807, because it was commenced before August 14, 1978. Why Congress has not fully corrected its original error is beyond the knowledge of the court, which agrees that the gap is very undesirable and continues to be so. In any event, H.R. 2807 demonstrates Congress' intent to continue the effect of 20 U.S.C. § 1087–3 through the transition period of the new Bankruptcy Act, and lends further support to the merits of plaintiff's argument under 1 U.S.C. § 109.

19, 22. On each such occasion, plaintiff's attorney told the bankruptcy court that he had made efforts to secure the written reinsurance agreement, but that no one at HESC or the appropriate federal agency, the United States Office of Education, could locate it. It seemed that due to legal or bureaucratic error, a written agreement covering the nine years from 1968 to 1977 was never made.

Absent the written evidence, the bankruptcy judge permitted plaintiff's witness, Miss Mullins, to testify only about the general reinsurance relationship between HESC and the Office of Education. The court would neither let plaintiff lay a proper foundation, nor permit plaintiff to examine the witness on the specific aspects of the reinsurance relationship, *id.* at 19. Because the bankruptcy judge would not permit plaintiff to even explain why an interim written agreement did not exist, or substitute specific oral testimony instead, he was in error. As a general proposition, in the absence of a written agreement, oral testimony on the validity of a contract is acceptable, *Adams v. Fitzpatrick*, 125 N.Y. 124, 128, 26 N.E. 143 (1891). A more detailed examination of this and related issues follows.

Traditionally, when a contract is entered into for a year's service under specified terms, and this service continues after a year, it may be concluded reasonably that the parties intended to renew the contract for another year. This is the case "even though the agreement, being oral and made more than a year before its original expiry, was until performed unenforceable under the Statute of Frauds." *Adams v. Fitzpatrick*, 125 N.Y. 124, 128, 26 N.E. 143 (1891); *Cinefot Int'l Corp. v. Hudson Photographic Ind.*, 13 N.Y.2d 249, 252, 246 N.Y.S.2d 395, 397, 196 N.E.2d 54, 56 (1963). Normally, the Statute of Frauds will invalidate a contract made orally by the parties and committing each to a relationship for more than one year. Yet the Statute of Frauds is concerned only with executory contracts; full performance of the terms of an oral agreement to be performed for over one year will take such an agreement out of the parameters of the Statute of Frauds.

More specifically with regard to the present case, an oral promise by one person to indemnify another for becoming a guarantor for a third person is not deemed to be within the Statute of Frauds, and need not be in writing. *Jones v. Bacon*, 145 N.Y. 446, 40 N.E. 216 (1895). Furthermore, as held by the court in *Brockport Developers, Inc. v. 47 Ely Corp.*, 82 Misc.2d 310, 369 N.Y.S.2d 601, 606 (Sup.Ct.1971),

the availability of pleading the Statute of Frauds has been limited to only those parties to the oral contract sought to be enforced, their privies and successors in interest. (*See*, 56 N.Y.Jur., "Statute of Frauds" § 337.) The statute is not generally available to a third-party stranger to the oral contract (*ibid.*, § 339). The bar of the statute has been characterized as "a shield and not a sword" (*Kaminsky v. Abrams*, 51 Misc.2d 5, 272 N.Y.S.2d 530) and a personal defense available to either party to the oral contract should they see fit (*Stitt v. Ward*, 142 App.Div. 626, 127 N.Y.S. 351), but not available to a third party or a stranger to the otherwise voidable agreement (*Kaminsky v. Abrams, supra*). Similarly, it is universally conceded that the doctrine of equitable estoppel may be invoked to preclude attack upon a voidable oral agreement when to permit the same would open the door to unjust enrichment or irreparable injury (*Donahue v. Manufacturers Trust Co.*, 10 Misc.2d 298, 166 N.Y.S.2d 174) or when one of the parties, in reliance upon the oral agreement, has performed to his detriment his part of the bargain (*La Rosa v. Matthews*, 28 Misc.2d 929, 214 N.Y.S.2d 463).

Thus, in the case at bar, it is perfectly proper for plaintiff to put its employees on the stand to testify that although the original written insurance agreement had expired, HESC and the Office of Education continued to perform as if that written agreement was in full force. Not only does the fact of this complete performance overcome the Statute of

Frauds defense, but this defense is also inapplicable here because a reinsurance relationship between HESC and the Office of Education is at issue. At the same time, it must also be recognized that defendant does not even have standing to assert the Statute of Frauds either indirectly or directly, inasmuch as he was not a party, privy, or successor in interest to the reinsurance agreement, *Brockport Developers, supra.* And lastly, the doctrine of equitable estoppel also precludes defendant from voiding an oral agreement between two other parties from which he derives the substantial benefit of $9,500.00, *id.*

In summary, the bankruptcy judge was mistaken in excluding testimony of HESC's employees concerning the reinsurance relationship between it and the Office of Education. On remand, should the testimony of these employees establish the validity of such a reinsurance relationship, then the bankruptcy judge should deem this agreement properly made under Sections 1071 *et. seq.*

### V. The Purpose of the Student Loan Program

While this Court expresses no opinion concerning the ultimate outcome of this dispute, it cannot help but observe that the federally insured student loan program was not intended to benefit those individuals who are able to repay their loans, but who prefer to escape such obligations through bankruptcy. Loan defaults of this kind are at the expense of the already overburdened taxpayer, those ex-students earnestly shouldering their repayment obligation, and the future student who may need to borrow in order to afford the increasing costs of a higher education, but who as a result of the alarming rate of student loan defaults and concomitant dwindling of the funding pool, might not be able to obtain the necessary funds.[6]

To avoid this situation, Section 1087–3 was created by Congress to ensure

that only students with legitimate hardships would be able to avoid repaying their loans. The statutory requirements for discharge are relatively clear, and it is the duty of the courts to strictly construe these provisions to protect the unnecessary expenditure of federal funds. Only through vigilant supervision of the discharge provisions by the courts, can those who cannot afford an education be assured of sufficient low-interest funds to permit them to pursue a career of their choice.

In conclusion, the bankruptcy judge was in error when he prohibited plaintiff from laying a proper foundation and offering oral testimony on the issue of the federal-state reinsurance relationship in the student loan program. The court finds this to be reversible error under Rule 810 of the Bankruptcy Rules of Procedure, and plaintiff is to be granted a new trial.

IT IS SO ORDERED.

---

**6.** *See* comments of Representative Allen E. Ertel, 1978 U.S.Code Cong. & Admin.News, pp. 639–41.