**In re Lindia D. KIDWELL, Bankrupt.**

**UNIVERSITY OF LOUISVILLE, Plaintiff,**

v.

**Lindia D. KIDWELL, Defendant.**

**Bankruptcy No. BK–79–01095–L.**

United States Bankruptcy Court, W. D. Kentucky.

June 20, 1980.

Martin N. Kute, Louisville, Ky., for bankrupt.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

In June of 1974 and August of 1975 the bankrupt obtained through the plaintiff National Direct Student Loans totaling $335 at 3% interest, signing notes to evidence those obligations. The National Di-

rect Student Loan (NDSL) Program provided that repayment of these loans was not to begin until after the borrower terminated full time studies.

The defendant was adjudged a bankrupt on May 29, 1979.

Plaintiff, University of Louisville, avers that these loans are nondischargeable pursuant to 11 U.S.C. § 523(a)(8) of the Bankruptcy Reform Act, which makes nondischargeable student loans owed to a government unit. The defendant maintains that since the bankruptcy petition was filed before October 1, 1979, the effective date of the Reform Act, 11 U.S.C. § 523(a)(8) is inapplicable and the debt is thus dischargeable. There is no dispute of fact.

In accord with this district's decision in *University of Louisville v. Harry P. Pittman, Jr.*, BK–79–01217–L, (W.D.Ky., Dec. 17, 1979), we find the debt to be dischargeable.

In 1976, 20 U.S.C. § 1087–3 (hereafter § 1087–3) was enacted as part of the Higher Education Act of 1965. Sec. 1087–3 provided that educational loans guaranteed by the United States were not dischargeable in bankruptcy within five (5) years after repayment was to begin, unless undue hardship would be suffered by the debtor.

When the Bankruptcy Reform Act of 1978 was enacted on November 6, 1978, certain provisions were given immediate effect,[1] though the bulk of the Act was not to become effective until October 1, 1979.[2] Among those provisions effective immediately was that repealing § 1087–3,[3] In its stead was to be 11 U.S.C. § 523(a)(8), which was not effective until October 1, 1979. The unfortunate result was the creation of a period of almost eleven months during which student loans were ostensibly dischargeable.

Realizing what it had done, Congress made effective on August 14, 1979 an additional subsection to an existing provision of

---

1. Act of November 6, 1978, P.L. 95–598, § 402(d).

2. Id. § 402(a).

3. Id. § 317.

the Bankruptcy Act of 1898.[4] The subsection corrected the premature repeal of the student loan nondischargeability provision by what amounted to its reenactment. The so-called "gap period" was thus reduced from 11 to 9½ months.

In the multitude of bankruptcy court decisions that consider the effect of this "gap period" it is almost universally accepted that its creation was a congressional mistake.[5] The critical question which has divided the courts is whether deference should be given to strict statutory construction or whether legislative intent should be judicially reconstituted to rectify an apparent statutory accident.

Straining the parameters of judicial activism, some courts have chosen not to recognize the repeal of § 1087–3 by dismissing it as a pure error.[6] They justify disregard of the repealer provision because of Congress' inadvertence in enacting it.

The statute, however, is unambiguous. To judicially reconstruct it in contravention of its plain meaning is going too far. Congress produced the law, and it is the function of Congress to change it. In fact, Congress did that on August 14, 1979. We therefore decline, as have other courts,[7] to ignore Congress' repeal of § 1087–3 merely because it was mistakenly enacted.

The Bankruptcy Reform Act of 1978 became effective on October 1, 1979. Were it not for § 403(a) of the Act, it might be necessary to consider whether we should apply the law in existence (1) at the date the petition was filed, or (2) on the date the decision on the issue of dischargeability is rendered. But § 403(a) of the Reform Act provides that:

"A case commenced under the Bankruptcy Act, and all matters and proceed-

ings in or relating to such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted."

This provision is aptly designated the "savings clause", since it preserves the law regarding petitions filed before the Reform Act became effective, and thereby divests the court of authority to apply the substantive law as of the date of its decision.

It is therefore not possible to hold that 11 U.S.C. § 523(a)(8), the Reform Act provision providing for nondischargeability of student loans, applies to petitions filed prior to October 1, 1979.

Normally, the application of the savings clause to a case pending on the effective date of the Reform Act will result in administration of the law in effect when the bankruptcy proceeding is commenced. This is so because in almost all instances the law at the time of filing, whether the filing occurred before or after the Reform Act's *enactment*, will be the same as the law as if the Reform Act "had not been *enacted*".

But the enactment date of the Act was eleven months prior to its effective date. To follow strictly the wording of the savings clause, "the only way to 'conduct, determine and govern' a case in bankruptcy as if the Bankruptcy Reform Act 'had not been *enacted*' is to deem the situation to be as it was on November 5, 1978, the day before enactment." [8]

On that date, student loan obligations were nondischargeable under § 1087–3. On the date this petition was filed, May 29,

**4.** Act of August 14, 1979, P.L. 96–56, 93 Stat. 387.

**5.** See e. g. *In re Leonard Anthony Kohn*, 5 BCD 419 (S.D.N.Y.1979).

**6.** Id.; *In re Henry*, 1 B.R. 295, 5 BCD 1014 (Bkrtcy.S.D.N.Y.1979); *In re Adamo*, 619 F.2d 216, 3 Bankr.L.Rep. (CCH) ¶ 67,412 (2nd Cir. 1980).

**7.** *In re Sawaya*, 2 B.R. 37, 5 BCD 1072 (Bkrtcy. D.Mass.1979; *In re Joseph King, Jr.*, 5 BCD 417 (S.D.Ohio 1979).

**8.** *Connecticut Student Loan Foundation v. Piccione*, 1 B.R. 364, 5 BCD 1076, 1079 (Bkrtcy.D. Conn.1979) (emphasis added).

1979, that section had been repealed by the repealer provision of the Reform Act. As provided in § 402(d), the repealer became effective when the Reform Act was enacted. Effectiveness for the rest of the Act was deferred until October 1, 1979.

The question thus becomes whether we should apply the law as it was on November 5, 1978, or the law of May 29, 1979.

A literal interpretation of the savings clause, taken alone, would indicate that pre-*enactment* law should apply to cases commenced after enactment and still pending on the Reform Act's effective date. As noted, in most transition cases the state of the law before the enactment will be identical to the post-enactment, pre-effective date law. Student loan dischargeability is a glaring exception.

The savings clause, however, should be considered in light of § 402(d). This section specifically makes effective the repeal of § 1087–3 on the date of the Act's enactment. The savings clause is of more general application.

■ Fundamental rules of statutory construction require that when two seemingly inconsistent statutes, one general and the other particular, are juxtaposed, the one of more particular applicability prevails.[9]

It is in regard to this rule that we must give effect to the law as it was when the case was commenced. To do otherwise would produce inconsistent results. In *Connecticut Student Loan Foundation v. Piccione*,[10] for instance, where the facts were identical to those herein, the Court found that a case begun during the gap period and decided after October 1, 1979, would be governed, pursuant to the savings clause, by pre-enactment law. The student loan was thus held nondischargeable under § 1087–3.

But if the same case were decided during the gap period (and before August 14, 1979), prior to the effective date of the savings clause, the repeal provision would be effective. While the Court in *Piccione* accepted this incongruency, we cannot.

To amplify the flaw in the *Piccione* rationale, we propose a hypothetical situation where, holding all else to be the same as herein, Congress did indeed intend to repeal § 1087–3 upon the Act's enactment and did not wish to replace it with a comparable provision. Following *Piccione*, the repeal would not be given effect if the decision were rendered after the Act's effective date.

Just as that would contravene the impact of the repeal of § 1087–3, so would a similar determination in the actual situation we confront.

We must apply statutory provisions so they may be read in consonance. Such would not be done if we were to interpret § 402(d) to be valid only in cases *filed and decided* in the eleven month period between the Reform Act's enactment and effective dates.

While we acknowledge that the entire issue of student loan dischargeability during the transition period has been plagued by statutory awkwardness, we cannot and will not compound these legislative problems by allowing the subordination of a specific statute to its more general counterpart.

■ Section 402(d) should thus prevail to make dischargeable student loans in cases commenced between November 6, 1978, and August 14, 1979, no matter when the issue of dischargeability is determined.

This decision of this Court has not been easily reached. The student loan program is designed to enable students who would not normally be creditworthy in a commercial sense to procure funds necessary to meet educational expenses. The loans are available at low interest rates, and payments are deferred until after studies are completed.

---

**9.** *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *Bulova Watch Co. v.*

*United States*, 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1964).

**10.** Supra, Note 8.

We abhor the willingness of so many to use this government entity, this bankruptcy court, to escape an obligation to that same government which put them within reach of educational goals substantially enhancing their lives. We reach our decision strictly as a matter of judicial restraint in matters of statutory construction. We would prefer it otherwise, but there is neither world enough nor time for us to divine and rectify every congressional error.

Upon the foregoing reasoning and authorities, it is

ORDERED that the student loan obligation of the bankrupt is dischargeable in bankruptcy, and it is further ordered that the complaint of the University of Louisville is dismissed. This is a final order. Judgment shall be entered accordingly.