**In the Matter of Joseph Clinton WILLIAMS, III, Bankrupt.**

**CONNECTICUT STUDENT LOAN FOUNDATION, Plaintiff,**

v.

**Joseph Clinton WILLIAMS, III, Defendant.**

**Bankruptcy No. 79–714–A.**

United States Bankruptcy Court, E. D. Virginia, Alexandria Division.

April 1, 1981.

Joseph Clinton Williams, III, Vienna, Va., debtor.

Chris Beatley, Alexandria, Va., for debtor.

Richard A. Bartl, Alexandria, Va., for plaintiff.

Roy B. Zimmerman, Alexandria, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

Joseph Clinton Williams, III, the defendant herein, filed a petition in bankruptcy on July 2, 1979. The plaintiff, Connecticut Student Loan Foundation, filed a Complaint pursuant to Section 17(c)(2) of the Bankruptcy Act asserting therein that a student loan received by the defendant is nondischargeable in bankruptcy.

The essential facts adduced at trial are not in dispute and the exhibits offered into evidence by the plaintiff have been stipulated to by the parties. The plaintiff is a non-profit, state-designated agency and a creditor of the defendant in the amount of $1,120.51. The plaintiff makes available to students federally-insured and guaranteed loans for educational purposes. The defendant acquired the loan in question from the plaintiff through the New Haven Savings Bank while a student at Yale University, whereby he executed two promissory notes (the latter a note extension agreement) which required him to commence making payments on July 1, 1974 and November 1, 1977, respectively and, thereaft-

er, he made timely payments on the first note from July 1974 through September 1976.

The defendant, in a letter admitted into evidence as Plaintiff's Exhibit 4, addressed to the New Haven Savings Bank, requested that the Bank permit him to forbear making further payments until he could locate gainful employment. The Bank, in a letter admitted into evidence as Plaintiff's Exhibit 5, acknowledged the receipt of the defendant's letter and requested that he execute the note extension agreements enclosed therein. As the defendant was four months in arrears at that time (February 1977), the one-year extension agreed upon by the defendant began on November 1, 1976.

The debt itself constitutes a federally-insured and guaranteed loan under Part E of Title IX of the Higher Education Act of 1965. The plaintiff alleges that as the defendant's bankruptcy petition was "filed after July 2, 1979, and was not brought after five years beginning on the commencement of the repayment period of such loan, as extended," he failed to meet the requirements of Title IV, Part B, Section 439A of the 1965 Act (20 U.S.C. § 1087–3).

The defendant denies the debt is nondischargeable. He contends that 20 U.S.C. § 1087–3 was not in effect at the time the first note became due in July 1974, and on the date he filed his petition in July 1979. Before analyzing these allegations in the context of determining the status of 20 U.S.C. § 1087–3, the Court must first resolve whether the substantive law which was in effect on July 2, 1979 (the date the debtor filed his petition) or the law in effect at another juncture governs in this proceeding. The Court is well aware of the conflicting decisions rendered by other bankruptcy courts on this issue. Several courts have held that it is the substantive law at the time the debtor files his petition which alone governs the rights of the parties. *E.*

*g., In re Sawaya,* 2 B.R. 37, 38 (Bkrtcy.D. Mass.1979); *In re James,* 4 B.R. 115, 117 (Bkrtcy.W.D.Pa.1980). Other courts, however, have concluded that "the law which governs is that which is in effect at the time the application for a discharge is passed upon, and not that which was in force when the petition in bankruptcy was filed." *In re Piccione,* 1 B.R. 364, 367 n. 6 (Bkrtcy.D.Conn.1979) *citing In re Sloss,* 192 F.Supp. 136 (S.D.N.Y.1961). In *Piccione, supra,* the court relies upon a 1928 decision rendered by the Fourth Circuit, *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir. 1928) in support of its position.

This Court is unpersuaded by the reliance placed upon the Fourth Circuit's decision in *Cooper* by the *Piccione* court. Rather, this Court notes the position taken in a recent bankruptcy decision rendered in this District with respect to the issue at hand, *In re Bonesteel,* No. 79–00927 (Bkrtcy.E.D.Va. R.D. April 8, 1980), and concurs with the result reached therein.[1] The *Bonesteel* court stated that *Cooper, supra,* was not applicable inasmuch as that decision was rendered at a time when a debtor was required to make a "formal application for his discharge." Admittedly, no Supreme Court decision has directly addressed this issue. However, a series of decisions rendered by the Supreme Court have consistently stressed the importance of the date of filing a petition as the critical date for structuring the administration of the bankruptcy estate and determining the rights of creditors. *See United States v. Marxen,* 307 U.S. 200, 207, 59 S.Ct. 811, 815, 83 L.Ed. 1222 (1939) (rights of creditors fixed at date debtor's petition filed); *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924) (homestead exemption must be declared at time bankruptcy petition is filed).

Title 20 of the United States Code, Section 1087–3(a), enacted as § 127(a) of Pub.L.

---

1. *See In re Bruce,* 3 B.R. 77, 88 (Bkrtcy.N.D.Ill. 1980) where the court subscribed to the view that a "juridical orientation" which renders proceedings relatively free from tampering or whim is preferable in determining the issue of

dischargeability of student loan debts. The Court held that as the time of filing a petition "is the critical date in most respects in bankruptcy cases," so should it be in establishing the rights of the parties in this issue as well.

94–482, 94th Cong.2d Sess. (October 12, 1976), 90 Stat. 2141, provides:

"(a) A debt which is insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents."

Subsection (b) provides:

"(b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after *September 30, 1977.*" (Emphasis added.)

In the instant matter, the defendant filed his petition after September 30, 1977 (*i. e.*, on July 2, 1979). Accordingly, the defendant's contention that 20 U.S.C. § 1087–3 of the Higher Education Act of 1965 was not in effect in 1974 and, therefore, is a bar to the present action cannot stand when considered in light of subsection (b) of Section 1087–3.

The defendant's second contention that 20 U.S.C. § 1087–3 was not in effect on the date he filed his petition requires further examination. In essence, the defendant is asserting the existence of an eleven-month hiatus when student loans presumably would be dischargeable in bankruptcy. The plaintiff, on the other hand, contends that this hiatus was due solely to congressional inadvertence and should not be construed to obviate the intent of Congress when it enacted Section 523(a)(8) of the Bankruptcy Code (11 U.S.C. § 523(a)(8)).

The Bankruptcy Code was signed by the President on November 6, 1978, and became effective on October 1, 1979. However, several of the provisions of Titles II, III and IV of the new Code became effective on the date of enactment. One of these provisions, Section 317 of Title III, provides that "Section 439A of Part B of Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1087–3) is repealed." [2]

The existence of the gap in statutory coverage making student loans dischargeable in bankruptcy was later recognized by Congress, and resulted in the enactment of the Technical Amendments Act of August 14, 1979. This Act made student loans once again nondischargeable by implicitly enacting 20 U.S.C. § 1087–3 as Section 17(a)(9) of the Bankruptcy Act, effective until October 1, 1979.[3]

The existence of this gap period has evoked much litigation resulting in sharply conflicting views as to the proper application of law in the discharge of student loans. The Court is of the opinion that 20 U.S.C. § 1087–3 applies to this proceeding notwithstanding its repeal by the Bankruptcy Code. This finding is based upon a careful review of the legislative history of the Technical Amendments Act, Section 523(a)(8) of the Bankruptcy Code, as well as relevant case law. In reviewing the basis for this conclusion, it seems advisable to first examine two other avenues of approach by which other courts have found student loans to be nondischargeable as well as those cases which have been critical of such decisions.

The District Court for the Northern District of New York, *In re Naramore*, 3 B.R. 709 (N.D.N.Y.1980), reviewing an appeal from a decision of a bankruptcy judge, determined that the interim period between the repeal of 20 U.S.C. § 1087–3 and the effective date of Section 523(a)(8) of the Bankruptcy Code did not render a debtor's

---

**2.** Section 402(a) of Title IV of the new Code provides that the provisions of the Bankruptcy Code became effective on October 1, 1979, except as provided in Section 402(d). As Section 402(d) specifically includes Section 317, the ef-

fective date of the repealing legislation was November 6, 1978.

**3.** This corrective legislation, H.R. 2807 was enacted as Pub.L. 96–56.

student loan debt dischargeable owing to the application of 1 U.S.C. § 109. This section provides:

> "The repeal of any statute shall not have the effect to release or extinguish *any penalty, forfeiture, or liability incurred under statute*, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." (Emphasis added.)

The *Naramore* court found that as the enactment of the Bankruptcy Code did not "expressly 'extinguish' the liability incurred under the old bankruptcy laws" the debtor remained "subject to the discharge criteria of Section 1087–3." *In re Naramore, supra,* 3 B.R. at 713. The court concluded that although Section 402(d) did repeal Section 1087–3:

> "[I]t did not 'so expressly provide' for immunity from suits filed previously to the date Section 1087–3 was repealed. Without such a qualifying clause, defendant's potential liability for full repayment of his student loan obligation has not been 'extinguished' by the repeal provision of the new Bankruptcy Act."

*Id.*

The court in *In re Utterback,* 1 B.R. 199 (Bkrtcy.N.D.Tex.1980), however, did not find 1 U.S.C. § 109 to be applicable in extending the life of 20 U.S.C. § 1087–3 to the effective date of the Bankruptcy Code. The general savings provision enacted as 1 U.S.C. § 109 was intended to abrogate the common law rule enunciated by the Supreme Court in *United States v. Tynen,* (11 Wall.) 78 U.S. 88, 20 L.Ed. 153 (1871) which provided "that any penalties incurred under a statute fell upon repeal of that statute if specific reservation was not made in the repealer." *In re Henry,* 1 B.R. 295, 298 (Bkrtcy.S.D.N.Y.1979). The *Utterback* and *Henry* courts held that 1 U.S.C. § 109 was

never meant to be applied to statutes of the kind typified by Section 1087–3. This is because the repealed provision, Section 439A, (20 U.S.C. § 1087–3) was not intended to establish any liability, penalty or forfeiture. *In re Utterback, supra,* 1 B.R. at 200.[4]

Several of the bankruptcy decisions reviewed herein have concluded that Section 403(a) of the Bankruptcy Code (the savings clause) preserved the issue of dischargeability of federally-insured loans under the Higher Education Act of 1965 in proceedings commenced under the Bankruptcy Act. By virtue of this savings clause provision, Section 1087–3 was considered as the applicable law in such cases. *E. g., In re Southard,* 2 B.R. 124 (Bkrtcy.W.D.Va.1979); *In re Piccione, supra; In re Weinstein,* 5 B.C.D. 503 (Bkrtcy.E.D.Pa.1979); *In re Erickson,* 5 B.C.D. 734 (Bkrtcy.E.D.Wis.1979); *In re Edson,* 4 B.C.D. 1191 (Bkrtcy.D.Nev.1979).

These decisions rely upon Section 403(a) which provides that proceedings commenced under the Bankruptcy Act and pending on October 1, 1979, must be conducted and determined under the applicable provisions of the Bankruptcy Act as if the Bankruptcy Code had not been enacted. The court *In re Piccione, supra,* 1 B.R. at 369, indicated that:

> "The only way to 'conduct, determine and govern' a case in bankruptcy as if the [Bankruptcy Code] 'had not been enacted' is to deem the situation to be as it was on *November 5, 1978,* the day before enactment. On that date, the [Bankruptcy Code] had not only not repealed the Bankruptcy Act, it had not, by the terms of § 317, repealed § 1087–3."

The rationale enunciated in *In re Piccione, supra,* and its progeny has been roundly criticized in numerous bankruptcy court decisions. *E. g., In re Kidwell,* 4 B.R. 685, 688 (Bkrtcy.W.D.Ky.1980); *In re Bonesteel, supra; In re Dodd,* 6 B.R. 1011 (Bkrtcy.N.D.Ga.1980); *In re Sawaya, supra;*

---

4. *Accord, In re Bruce, supra,* 3 B.R. at 91. The court in *Bruce* rejected the argument that the repeal of 20 U.S.C. § 1087–3 did not extinguish the liability on a student loan debt. This is because the liability clearly was not "created

by the repealed statute, but rather had been created by the voluntary act of the student in signing the promissory note upon which the claim was based." *See also In re Christopher,* 5 B.C.D. 214 (Bkrtcy.W.D.N.Y.1979).

*In re Vittek*, 5 B.C. 429 (N.D.Ohio 1979); *In re Bruce, supra; In re Utterback, supra; In re King*, 5 B.C.D. 417 (Bkrtcy.S.D.Ohio 1979).

These decisions uniformly make the observation that because Section 403(a), and the Bankruptcy Code as a whole (with certain exceptions), did not become effective until October 1, 1979, it would not be dispositive in proceedings commenced after the repeal of 20 U.S.C. § 1087–3 but before the enactment of the Bankruptcy Code.[5] *See also In re Adamo*, 619 F.2d 216, 221 (2d Cir. 1980). The decisions reviewed herein conclude that since Section 403(a) was not "expressly mentioned in Section 402, its application [was] effectively postponed to October 1, 1979." *In re Sawaya, supra*, 2 B.R. at 40. *See also In re Bonesteel, supra*, No. 79–00927 at 6.

It is conceded generally that the repeal of Section 439A (20 U.S.C. § 1087–3) by Section 317 of the Bankruptcy Code, as of the day of enactment rather than on the effective date (October 1, 1979), was due to an error in legislative drafting. However, the decisions reviewed by this Court reveal a sharp conflict as to whether this mistake may be judicially corrected on the grounds that as congressional intent is clear, the courts should effectuate that intent by disregarding the gap period.

Decisions rendered by a number of bankruptcy courts have been critical of the position which construes the gap period as simply the result of congressional inadvertence. *E. g., In re Dodd, supra*, 6 B.R. 1011; *In re Bonesteel, supra*, No. 79–00927 at 6; *In re Bruce, supra*, 3 B.R. at 85; *In re Sawaya,*

*supra*, 2 B.R. at 39; *In re King, supra*, 5 B.C.D. at 417.

With the exception of the *King* decision, the above-stated cases were rendered after Congress enacted the Technical Amendments Act on August 14, 1979. The purpose of the Technical Amendments Act (H.R. 2807, Pub.L. 96–56) was to correct the gap. The existence of the gap was recognized by the Senate Judiciary Committee in a report issued in connection with the Technical Amendments Act. The Committee stated:

> "The gap in coverage of a prohibition on the discharge in bankruptcy of loans made under the Guaranteed Student Loan Program resulting from the early repeal of section 349A [sic] *is very undesirable and totally inadvertent.* Accordingly, section 1 of the bill revises the intent of section 439A *to maintain the status quo until such time as* 11 U.S.C. § 523(a)(8) becomes effective." (Emphasis added.)

S.Rep.No.96–230, 96th Cong., 1st Sess. 2 *reprinted in* [1979] U.S.Code Cong. & Admin.News, pp. 936, 937.

It has been held that "[t]he determination of legislative intent from material issued after the passage of the act in question can be permitted only in the most exceptional instances and with reference to clarifications by the same Congressional Committee which considered the statute at the enactment." *Volkswagen of America, Inc. v. United States*, 340 F.Supp. 983, 988 (Cust. Ct.1972) *affirmed* 494 F.2d 703 (C.C.P.A. 1974). Thus, while the interpretation given

---

**5.** The court in *In re Kidwell, supra*, 4 B.R. at 688, made the observation that the Bankruptcy Code savings provision Section 403(a), by necessity is general in nature, while Section 402(d) deals with the repeal of a particular statute, 20 U.S.C. § 1087–3, effective November 6, 1978. Applying rules of statutory construction the *Kidwell* court determined that when two statutes are juxtaposed, the one general, the other particular, "the one of more particular applicability prevails." Thus, the court in *Kidwell* determined that 20 U.S.C. § 1087–3 was not saved by Section 403(a) of the Bankruptcy Code.

The *Kidwell* court also noted the incongruency in the rationale offered by the *Piccione* court in finding the savings provision of the Bankruptcy Code to be dispositive of this issue. The *Piccione* court determined that a proceeding commenced during the hiatus and not decided until after the effective date of the Bankruptcy Code (October 1, 1979) would be subject to pre-enactment law, pursuant to the savings provision. However, if the identical proceeding were determined during the hiatus and prior to the enactment of the Technical Amendments Act (*i. e.,* prior to the effective date of the savings provision) the provision repealing 20 U.S.C. § 1087–3, Section 402(d), would be effective.

by the Senate Judiciary Committee is not controlling on this Court, it is entitled to due weight "in determining the intention of an earlier Congress." *In re Adamo, supra,* 619 F.2d at 221.[6]

The principal issue herein is whether the Technical Amendments Act is to be considered effective as of its date of enactment (August 14, 1979) or earlier. The court *In re Sawaya, supra,* 2 B.R. at 39, stated that in light of the passage of this Act apparent congressional intent could no longer be presumed. The *Sawaya* court was of the view that Congress was well aware of its error in repealing 20 U.S.C. § 1087–3 on November 6, 1978, rather than October 1, 1979, but chose only to narrow the gap, not eliminate it. Thus, under this view, Congress, by tacitly recognizing the hiatus upon enacting the Technical Amendments Act, made the determination not to "interfere with any rights which the parties may have had, or which may have been judicially determined to exist between November 6, 1978 and August 14, 1979." *Id.*

The rationale enunciated by the court in *Sawaya, supra,* is not one of uniform application, however. The court *In re Kohn,* 5 B.C.D. 419 (Bkrtcy.S.D.N.Y.1979) concluded that the gap created by the repeal of 20 U.S.C. § 1087–3 was the result of congressional inadvertence in that there was no reason to find that the effective date of 11 U.S.C. § 523(a)(8) and the repeal of Section 439A should not coincide. This decision has been thought to be without persuasive authority because it was rendered prior to the enactment of the Technical Amendments Act. Nevertheless, a number of decisions rendered after this Act's enactment have found the comprehensive analysis of the legislative history in the *Kohn* opinion to be persuasive. *E. g., In re Adamo, supra,* 619

F.2d at 219; *Wisconsin Higher Educational Aids Board v. Lipke,* 6 B.C.D. 1023, 1027, 630 F.2d 1225 (7th Cir. 1980); *In re Southard, supra,* 2 B.R. at 125; *In re Henry, supra,* 1 B.R. at 298–299.

The decision of the Second Circuit, *In re Adamo, supra,* 619 F.2d at 219, while recognizing that a hiatus was created between the time of the repeal of 20 U.S.C. § 1087–3 and the effective date of enactment of 11 U.S.C. § 523(a)(8), found it to be "purely a manifestation of congressional inadvertence." The *Adamo* court concluded that to "follow blindly the plain meaning of the statute without regard to the obvious intention of Congress would create an absurd result in accord with neither established principles of statutory construction nor common sense." *Id.* Accord, *Wisconsin Higher Educational Aids Board v. Lipke, supra,* 6 B.C.D. at 1027.

The courts in *Adamo* and *Lipke* concluded that the clear purpose of the Technical Amendments Act was to remove entirely the gap inadvertently created by the premature repeal of Section 439A (20 U.S.C. § 1087–3) and the enactment of 11 U.S.C. § 523(a)(8), effective October 1, 1979.[7]

■ The Court acknowledges and hereby adopts the Seventh Circuit's conclusion in *Lipke, supra,* 6 B.C.D. at 1027, n. 8, 630 F.2d 1225, that in light of the legislative history of the Technical Amendments Act it is reasonable to construe the Act as giving retroactive effect to 20 U.S.C. § 1071 *et seq.* to November 6, 1978 (the date of enactment of the Bankruptcy Code) rather than as of August 14, 1979 (the date of the Act's enactment). *See Silverlight v. Huggins,* 488 F.2d 107, 108 (3d Cir. 1973), wherein the Third Circuit observed that "curative legislation is often presumed to operate retroactively in the absence of contrary intent."

---

**6.** A petition for certiorari was filed appealing the Second Circuit's decision in *Adamo, supra,* by two of the debtors therein, Chandos C. Williams and his wife, in *Williams v. N. Y. State Higher Education Services Corporation,* 619 F.2d 216 (2d Cir. 1980), cert. denied, —— U.S. ——, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980).

**7.** In support of their position, the courts in *Adamo, supra,* 619 F.2d at 221, and *Lipke,*

*supra,* 6 B.C.D. at 1027, 630 F.2d 1225, expressed the view that although the "savings" provision incorporated into the Bankruptcy Code, Section 403(a), did not become effective until October 1, 1979, this provision was indicative of congressional intent "not to impair the rights of parties to actions commenced under the old Bankruptcy Act."

In reaching this conclusion the Court is mindful of the fact that nondischargeability of student loans within the statutorily provided period of time was the rule prior to November 6, 1978 and remained the rule after October 1, 1979. Indeed, it is uncontroverted that the enactment of Section 523(a)(8) of the Bankruptcy Code clearly illustrates congressional intent not only to renew a provision similar to Section 439A but to enhance and broaden the scope of its coverage.

■ Under these compelling circumstances, it is evident that to apply Section 317 of the Bankruptcy Code (which repealed Section 439A) and Section 402(d) (making Section 317 effective on November 6, 1978) strictly in accord with their literal meaning would pervert the manifest purpose of the statute by ignoring clear congressional intent in formulating this legislation. Certainly, "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." *National Railroad Passenger Corporation v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). *See Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J., concurring).

The issue presently before the Court is whether the extension note executed by the defendant permitting him to defer further payment on his student loan for one year effectively tolled the commencement of the critical statutory five-year period as prescribed in 20 U.S.C. § 1087–3. As previously stated, subsection (a) of Section 1087–3 provides, in pertinent part:

"A debt . . . may be released by discharge . . . only if such discharge is granted after the five-year period (exclu-

sive of any applicable suspension of the repayment period) . . . of such loan. . . ." [8]

■ In order for a debtor to discharge a student loan debt he must file his petition more than five years after the commencement of the repayment period. The repayment period is determined from the definite date set forth in the applicable promissory note. *In re Mahler*, 4 B.C.D. 905 (Bkrtcy. W.D.Pa.1978).

■ However, if the commencement of the repayment period is suspended, the general rule is that the five-year period is tolled. This rule may best be illustrated by the following hypothetical situation. A student graduates in May 1974 having received a baccalaureate degree. In September 1975 he enters graduate school as a full-time student. Upon his graduation in May 1976 he joins the Peace Corps for three years. After he completes his tour of service in May 1979 he remains unemployed for a year while seeking full-time employment. This individual could not discharge his loan (in the absence of undue hardship) until at best five years and nine months (the applicable grace period usually allowed, *see* 20 U.S.C. § 1087dd(c)(1)(A); *see also In re James, supra*, 4 B.R. at 119 n.3) after he had been unemployed for a full twelve months. *See* Ahart, *Discharging Student Loans in Bankruptcy*, 52 Am.Bankr.L.J. 201, 205 (Summer 1978).

In the case presently pending, the definite date stated in the first note is July 1, 1974. But for the extension note, wherein commencement of payment was to begin on November 1, 1977, the five-year period provided for in 20 U.S.C. § 1087–3 would have run after the defendant made the final

---

**8.** One rationale given for the establishment of student loan programs is "to ensure a sufficient supply of well-trained competent, professional and technical personnel." Such programs are designed to "allow every person the fullest possible educational opportunity by making loans available to those who could not otherwise obtain a loan because of their age and lack of collateral or borrowing history." Note, *Student Loan Bankruptcies*, 1978 Wash.U.L.Q. 593, 595–6.

Section 1087–3 is designed primarily to remedy the perceived abuse whereby some students seek to discharge their student loan debts shortly after graduation and then embark on "working career[s] free of the debt[s they] rightfully owe[ ]." S.Rep.No.882, 94th Cong., 2d Sess., at 32, *reprinted in* [1976] U.S.Code Cong. & Ad.News, 4713, 4744.

installment payment on the first note which was due on June 1, 1979.

The defendant contends that his endorsement of the extension note did not toll the commencement period for payment on the original note. He contends further that the extension note was "executed . . . as an accommodation for and at the" plaintiff's request.

Notwithstanding the defendant's contention, the Court is of the firm belief that the party being accommodated was the defendant and not the plaintiff. In a letter dated February 2, 1977 the defendant requested the noteholder, the New Haven Savings Bank, to permit him to forbear making further payments on the first note until he could locate gainful employment. The Bank, in a letter dated February 8, 1977, honored the defendant's request. This letter stated, in pertinent part:

"Due to a new Federal law, I [Mrs. B. R. Beale, Administrative Assistant, Student Loan Department] am free to offer you [the defendant] an interest free extension of your loan for a period of up to one year. If you sign the enclosed note extension agreements and indicate how long an extension you wish to apply for I will be happy to take care of the matter for you. Please bear in mind that the extension will start November 1, 1976 (the date of your next payment due). Six months would carry you to May 1, 1977 at which time payments would again become due. The maximum extension would be to November 1, 1977."

The defendant thereafter requested and received a deferral on repayment of the note for the maximum period of one year—to November 1, 1977.

The federal statute referred to in the bank's letter to the defendant is 20 U.S.C. § 1087dd(c)(1)(C), which provides that "at the option of the institution [holding the student loan promissory note it] . . . may . . . permit a borrower to pay less than $30 per month for a period of not more than one year where necessary to avoid hardship to the borrower. . . ." The extension note executed by the defendant clearly falls within the general rule tolling the commencement of the statutory five-year period set forth in 20 U.S.C. § 1087–3 inasmuch as it constitutes a "suspension of the repayment period."

In enacting 20 U.S.C. § 1087dd(c)(1)(C) Congress recognized that a valid public interest would be served by permitting lending institutions, in their discretion, to extend the repayment period of a loan obligation owed by a student borrower who is unemployed and seeking full-time employment. Having examined this section in conjunction with 20 U.S.C. § 1087–3, the Court is unable to discern a congressional intent to allow a borrower/debtor to take advantage of a provision permitting a lending institution to extend to him a deferral on repayment of his student loan (in the course of that lending institution's dealings with the borrower/debtor) which, under another section (20 U.S.C. § 1087–3) of the student assistance statute (20 U.S.C. § 1071 et seq.), may be dischargeable in bankruptcy.[9]

On the contrary, 20 U.S.C. § 1087–3 clearly states that the statutory five-year period will be "exclusive of any applicable suspension of the repayment period." Therefore, the Court finds that the defendant, upon executing the extension note, effectively caused the statutory five-year period to be suspended for the term of the extension provided therein.

---

**9.** It is important to note that an accession to the defendant's position could very well have a chilling effect on the part of lending institutions to continue the permissive policy allowed under 20 U.S.C. § 1087dd(c)(1)(C) of honoring borrowers' requests for an extension of the repayment period on their loans while they are seeking employment. Indeed, the adoption of the view advocated by the defendant could be construed as judicial acquiescence to a restraint of trade which one authority describes as including those "acts . . . which prejudice public interest by unduly . . . obstructing the due course of trade or injuriously restrain trade either because of their inherent nature or effect or because of their evident purpose." 54 Am. Jur.2d, *Monopolies, Restraints of Trade, and Unfair Trade Practices*, § 31 (1971).

Accordingly, the Court holds that as the five-year period, beginning on the date of commencement of the repayment period, had not run at the time of the filing of the defendant's petition, the debt owed by him in the amount of $1,120.51 be, and hereby is, declared nondischargeable.