In re Wanda Gail BROUGHTON,
Bankrupt.

GEORGIA HIGHER EDUCATION
ASSISTANCE CORPORATION,
Plaintiff,

v.

Wanda Gail BROUGHTON, Defendant.

In re Lucious Robert Leon
DODD, Bankrupt.

GEORGIA HIGHER EDUCATION
ASSISTANCE CORPORATION,
Plaintiff,

v.

Lucious Robert Leon DODD, Defendant.

In re Aric CARNEGIA, Bankrupt.

GEORGIA HIGHER EDUCATION
ASSISTANCE CORPORATION,
Plaintiff,

v.

Aric CARNEGIA, Defendant.

In re Jackie Judith HENSON, f/k/a
Jackie Judith Clark, Debtor.

GEORGIA HIGHER EDUCATION
ASSISTANCE CORPORATION,
Plaintiff,

v.

Jackie Judith HENSON, f/k/a Jackie
Judith Clark, Defendant.

In re Jackie Judith HENSON, f/k/a
Jackie Judith Clark, Debtor.

BOARD OF REGENTS OF the UNIVER-
SITY SYSTEM OF the STATE OF
GEORGIA and on Behalf of the Univer-
sity of Georgia, Plaintiff,

v.

Jackie Judith HENSON, f/k/a Jackie
Judith Clark, Defendant.

Civ. A. Nos. C80–945A to C80–948A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 28, 1980.

Karen Fagin White, Macey & Zusmann, Atlanta, Ga., for appellants.

Marilyn S. Bright, Atlanta, Ga., for appellee Aric Carnegia.

Donald G. Loggins, Dalton, Ga., for appellee Jackie Judith Henson.

## ORDER

SHOOB, District Judge.

### I. BACKGROUND

Each of these consolidated bankruptcy appeals [1] presents the following question of law: whether this Court shall affirm or reverse the bankruptcy courts below, which strictly applied the letter of the law despite clear indications that the law did not reflect the intent of Congress. Specifically, Congress inadvertently failed to mesh the repeal of 20 U.S.C. § 1087–3, a provision which limited the dischargeability in bankruptcy of certain student loan debts, with

1. The appeals were consolidated by order of this Court dated September 2, 1980, because each one presents the same primary legal issue.

2. The statutory language is set out fully in this order at pages 1014–1015, *infra*.

3. Appellants apparently do not appeal the ruling of the bankruptcy judges that the applicable law is that which was in effect on the day

the effective date of the replacement provision in the new Bankruptcy Code.[2] § 317 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 402(d), the repealer section, was effective November 6, 1978. The replacement section, 11 U.S.C. § 523(a)(8), was not to become effective until October 1, 1979. When Congress noted the "gap" or "hiatus" it had created, it acted to close it, P.L. No. 96–56, effective August 14, 1979. But the curative legislation was not made retroactive, and hence there were no legal restrictions on the dischargeability of student loans in bankruptcy from November 6, 1978 until August 14, 1979.

The question whether to enforce Congressional intent or inadvertent Congressional action involves two additional questions: (1) is the applicable law in determining discharge the law as it existed on the date the bankruptcy petition was filed, the date the bankruptcy court decided the discharge issue, or some other date? and (2) if the "hiatus" is to be filled, should it be filled with the earlier provision which was prematurely repealed, or with the curative legislation, by making it retroactive?

The primary question presented here has produced a large number of reported decisions in a short period of time. There is no consistency in these decisions as to either reasoning or result. In each decision of the bankruptcy court appealed here, the bankruptcy judge: (1) applied the law in effect on the date the bankruptcy petition was filed [3] and (2) finding there to be a "hiatus," concluded that the student loan debts were dischargeable. None of the bankruptcy decisions included as an alternate holding that even if, as a matter of law, there was no "gap" or "hiatus," the student loan debt was dischargeable as an "undue hardship on

the bankruptcy petition was filed. Nevertheless, a holding to the contrary as to this issue would have reversed the result in each case. The decisions as to discharge challenged here were all rendered in 1980; the replacement provision limiting the dischargeability of student loan debts came into effect on October 1, 1979. *See* 11 U.S.C. § 523(a)(8).

the debtor or his dependents." 20 U.S.C. § 1087–3(a). For the reasons set forth in this order, this Court concludes (1) that the decisions below were correct in determining that the applicable law is that which was in effect at the time the bankruptcy petition was filed; but (2) that it was error to apply the law literally in this particular instance, due to the clear expression of Congressional intent that the hiatus was inadvertent, and to Congress' attempt to close the hiatus; and (3) that the law during the November 5, 1978–August 14, 1979 hiatus was 20 U.S.C. § 1087–3, since Congress did not intend to repeal this provision until its replacement became effective.

## II. FACTS

In the case of *In re: Wanda Gail Broughton; Georgia Higher Education Assistance Corporation v. Wanda Gail Broughton*, C80–945A (Bankruptcy No. B79–2438A), the voluntary petition in bankruptcy was filed on August 10, 1979. So far as appears from the record below, the bankrupt is currently a telephone repairperson for Southern Bell Telephone. Affidavit of Karen Fagin White, December 28, 1979. On November 5, 1979, plaintiff Georgia Higher Education Assistance Corporation ("GHEAC") filed its "Complaint and Application for Determination of Dischargeability of Plaintiff's Debt and for Relief from Automatic Stay." GHEAC claimed that defendant owed plaintiff GHEAC the principal sum of $5,121.35, plus interest, for educational loans extended to defendant by Decatur Federal Savings and Loan Association and later assigned to and guaranteed by plaintiff. Defendant failed to answer and on January 3, 1980, plaintiff moved for default judgment in its favor. Judge Hugh Robinson of the Bankruptcy Court rendered his decision and judgment adverse to plaintiff, as described above, on March 28, 1980. Plaintiff's notice of appeal was filed on April 28, 1980.

In the second consolidated appeal, *In re: Lucious Robert Leon Dodd; Georgia Higher Education Assistance Corporation v. Lucious Robert Leon Dodd*, C80–946A (Bankruptcy No. B79–2236A), the petition in bankruptcy was filed on July 24, 1979. So far as appears from the record below, the bankrupt is presently employed as an Assistant Manager of an office of The Equitable Life Assurance Society. Affidavit of Karen Fagin White, November 12, 1979. GHEAC filed its "Complaint and Application for Determination of Dischargeability of Plaintiff's Debt and for Relief from Automatic Stay" on September 19, 1979. Plaintiff GHEAC claimed in this action that defendant Dodd owed plaintiff the principal sum of $3,621.24, plus interest, for educational loans. These loans were made to defendant by the First State Bank of Cobb County and assigned to and guaranteed by plaintiff. Defendant filed no answer and on November 13, 1979, plaintiff moved for default judgment. Bankruptcy Judge A. D. Kahn rendered his decision and judgment in defendant's favor on April 17, 1980. Plaintiff's notice of appeal was filed on May 28, 1980.

In the third case, *In re: Jackie Judith Henson, f/k/a Jackie Judith Clark, f/k/a Jackie Judith Baggett; Georgia Higher Education Assistance Corporation and the Board of Regents of the University System of the State of Georgia for and on Behalf of the University of Georgia v. Jackie Judith Henson*, C80–948A (Bankruptcy No. B79–339R), the voluntary petition in bankruptcy was filed on July 2, 1979. It appears from the record that the bankrupt is employed as a Clerk at G & S Office Supply in Dalton, Georgia. Affidavit of Thomas P. Stamps, January 18, 1980. On July 17, 1979 plaintiff Board of Regents of the University System of the State of Georgia on behalf of the University of Georgia filed its "Complaint for Relief from Automatic Stay," which alleged that defendant owed plaintiff the principal sum of $1,920.60, plus interest, for educational loans. Plaintiff Board filed a motion for summary judgment on August 27, 1979; defendant never responded. On November 2, 1979, Bankruptcy Judge Robinson granted the motion as unopposed, pursuant to Local Court Rule 91.2. But on April 25, 1980, Judge Robinson reconsidered and vacated his November 2, 1979 order,

and determined that defendant's debt to plaintiff Board was dischargeable in bankruptcy. Judgment was entered in defendant's favor on April 30, 1980, and plaintiff Board filed its notice of appeal on May 5, 1980.

Plaintiff–appellant GHEAC filed its "Complaint and Application for Determination of Dischargeability of Plaintiff's Debt and for Relief from Automatic Stay" against defendant Jackie Judith Henson on October 31, 1979. The complaint alleged that defendant owed plaintiff $1,500.00, plus interest, from educational loans made to defendant by the Hardwick Bank and Trust Company of Dalton, Georgia, and assigned to and guaranteed by plaintiff GHEAC. Defendant never answered, and on January 21, 1980, plaintiff GHEAC moved for default judgment. On April 25, 1980, Judge Robinson determined the issue of dischargeability in defendant's favor and judgment was entered on April 30, 1980. Plaintiff GHEAC's notice of appeal was filed May 5, 1980.

The fourth and final consolidated appeal is *In re: Aric Carnegia; Georgia Higher Education Assistance Corporation v. Aric Carnegia,* C80–947A (Bankruptcy No. B79–1712A). The bankrupt filed his voluntary petition on June 6, 1979. On September 13, 1979, plaintiff GHEAC filed its "Complaint and Application for Determination of Dischargeability of Plaintiff's Debt and for Relief from Automatic Stay," which alleged that defendant owed plaintiff the principal sum of $3,962.31, plus interest, for educational loans made by the Adel Banking Company to defendant, which debt was assigned to and guaranteed by plaintiff GHEAC. Defendant's answer was filed on October 17, 1979. On October 29, plaintiff

GHEAC moved for summary judgment; and on November 19, 1979, defendant's cross–motion for summary judgment was filed. On April 9, 1980, Bankruptcy Judge Drake denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment. Plaintiff filed its notice of appeal on April 21, 1980.[4]

## III. STATUTES

In 1976, Congress decided to place limits on the dischargeability of student loan debts in bankruptcy. Immediately before its repeal, this statute, 20 U.S.C. § 1087–3, provided that for any proceeding begun under the Bankruptcy Act on or after September 30, 1977,

A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five–year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five–year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

However, this provision was repealed by § 317 of the Bankruptcy Reform Act of 1978 ("BRA"). § 402(d) of the BRA makes it clear that the repeal of 20 U.S.C. § 1087–3 was effective on November 6, 1978, the date of enactment of the BRA. Its replacement provision, now 11 U.S.C. § 523(a)(8), did not become effective until October 1, 1979.[5] The only potentially ap-

---

4. Bankrupt/appellee Carnegia has also filed an appeal challenging the correctness of Bankruptcy Judge Drake's decision to approve the transfer of claim from Adel Banking Company to plaintiff/appellant GHEAC. Order of Judge Drake, dated March 4, 1980; entered April 9, 1980. It is true that plaintiff GHEAC's application to transfer the claim was tardy. But appellee/bankrupt Carnegia cites no pertinent authority for his argument that the judge below

erred as a matter of law or abused his discretion in granting the application for what was essentially a technical transfer. For the reasons set forth in his order of April 30, 1980, Judge Drake's decision as to this issue is AFFIRMED.

5. 402(a) of the BRA provides that "[e]xcept as otherwise provided in this title, this Act shall take effect on October 1, 1979."

plicable savings provision, § 403(a) of the BRA, likewise did not come into effect until October 1, 1979.[6] Thus there existed a "gap" or "hiatus" between the effective dates of the old and new provisions restricting bankruptcy discharge of student loan debts.[7]

Congress attempted to correct the situation in passing P.L. 96–56, 93 Stat. 387. Section one of this corrective measure added to the old Bankruptcy Act "the exception to discharge language which prior to its repeal had been codified as 20 U.S.C. § 1087–3." *In re Adamo*, 619 F.2d 216, 221, n. 7 (2d Cir. 1980). Unfortunately, however, section two of the corrective legislation made section one applicable "with respect to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act [August 14, 1979] and ending October 1, 1979." As Judge Kahn in the *Dodd* case (appealed here) summarized, Congress passed legislation resulting in a

> patchwork–like treatment for the discharge of student loan debts: dischargeable until September 30, 1977; not dischargeable from September 30, 1977 until November 6, 1978; dischargeable from November 6, 1978 to August 14, 1979; not dischargeable from August 14, 1979 to the present.

*In re Dodd, supra*, Memorandum of Opinion, April 18, 1980, page 3.

## IV. CONGRESSIONAL INTENT

Every court that has considered the question presented by these consolidated appeals has concluded that the repeal of 20 U.S.C. § 1087–3 before the effective date of 11

U.S.C. § 523(a)(8) was inadvertent, a Congressional mistake. *See, e. g., In re Adamo, supra*, 619 F.2d at 219. While a bill was introduced in the 95th Congress which would have repealed 20 U.S.C. § 1087–3 altogether, the contrary sentiment ultimately prevailed, and the replacement section for 20 U.S.C. § 1087–3 which took effect on October 1, 1979 was broadened in scope.[8] *In re Adamo, supra*, 619 F.2d at 220.

In the conference committee, differences between the Senate and House bills on dischargeability were resolved but the

> committee failed, however, to notice that the section repealing 20 U.S.C. § 1087–3 as of the date of enactment remained in the House bill. Thus, as subsequently approved by Congress and signed into law by the President, the BRA contained the House repeal provision and, due to the insistence of the Senate conferees, a broad replacement provision, the effective dates of which did not coincide. There is no indication in the history of the BRA that Congress intended to legislate such an inconsistency or that it sought for some unexpressed reason to create an approximately eleven–month hiatus for the benefit of student loan debtors.

*In re Adamo, supra*, 619 F.2d at 220.

That the hiatus was inadvertent is confirmed by the legislative history of the curative legislation, P.L. No. 96–56, effective August 14, 1979. The pertinent portions of Senate Report 96–230 are set out here in full.

---

6. See note 5, *supra*.

7. The background of this hiatus is set forth at greater length in *In re Johnson*, 5 Bankr.Ct.Dec. 532, 532–35 (E.D.Pa.1979); *In re Edson*, 4 Bankr.Ct.Dec. 1191, 1192–94 (D.Nev.1979); and *In re Adamo*, 619 F.2d 216, 218 (2d Cir. 1980).

8. The replacement provision provides that an individual debtor shall not be discharged from any debt–

> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or

made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless–

> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . . .

11 U.S.C. § 523(a)(8).

Public Law 95–598 also repealed, effective November 6, 1979, section 439A of the Higher Education Act of 1965. *The gap in coverage of a prohibition on the discharge in bankruptcy of loans made under the Guaranteed Student Loan Program resulting from the early repeal of section 349A [sic] is very undesirable and totally inadvertant [sic]. Accordingly, section 1 of the bill revises the intent of section 439A to maintain the status quo until such time as 11 U.S.C. 523(a)(8) becomes effective.* Section 2 provides that the amendments made by section 1 will apply to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act and ending October 1, 1979.

.  .  .  .  .

Section–by–Section Analysis

Section 1 of the bill *closes the inadvertant [sic] "gap"* created when the applicable section of the Higher Education Act of 1965 prohibiting discharge of student loans was repealed as of November 6, 1978, and its replacement section in title 11 was not made effective until October 1, 1979. *Congress obviously did not mean to create a gap and at all times held to the principle of nondischargeability of student loans as was found in section 439A of the Higher Education Act of 1965.*

Section 2 provides that the amendments made by section 1 will apply to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act and ending October 1, 1979.

[1979] U.S.Code Cong. & Admin.News, pp. 936, 937–38 (emphasis added). Congress did not make the curative legislation retroactive but that was also inadvertence; Congress "at all times held to the principle of nondischargeability" and by this curative legislation intended to "maintain the status quo" by closing the "inadvertant [sic] gap." This clear expression of Congressional intent that the gap should not have occurred, and that it was to be closed, is confirmed by the remarks of members of Congress at the

time the bill was passed. *See In re Adamo, supra*, 619 F.2d at 221, n. 7.

V.  DISCUSSION

The issue, then, is whether to apply the law literally or, in this case, to apply as law what Congress clearly intended to legislate. It would serve no useful purpose to review all the cases on this point. In the case of *In re Adamo, supra*, the Second Circuit surveyed the cases and found that eleven cases concluded that automatic discharge was appropriate due to the hiatus, and an equal number denied automatic discharge. It would likewise serve no useful purpose to review the reasoning of the cases. A literal application of the law leads to the conclusion that student loan debts were dischargeable during the gap; a "construction" of the naked words of the applicable statutes to reach the opposite result does violence to their plain meaning. The opinions of the Bankruptcy Court on appeal here have adequately demonstrated the weakness of the legal reasoning of such "construction." The question is not one of construction, but of repair. But this Court concludes that this is one of those rare instances where, to give effect to the clear intent of Congress, courts should overlook the words of the statute.

Both circuit courts of appeal which have considered this question have concluded that under these circumstances, it is appropriate to give effect to Congressional intent. *In re Adamo*, 619 F.2d 216 (2d Cir. 1980), *cert. den. sub nom. Williams v. New York State Higher Education Services Corporation*, —— U.S. ——, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980); *Wisconsin Higher Educational Aids Board v. Lipke*, 630 F.2d 1225, 49 U.S.L.W. 2237 (7th Cir., Sept. 19, 1980).

In *In re Adamo*, after a review of the cases and the obvious Congressional mistake, the Second Circuit concluded:

Finally, we note the apparent absurdity of a construction of the BRA which, for no discernible reason, would permit the discharge of student loans by debtors who, by sheer chance, have their bank-

ruptcy petitions adjudicated during the eleven–month gap.[9] Both before and after this period, nondischargeability has been and will continue to be the rule; absent an explicit statement of intent by Congress to provide a period of "amnesty" for student loan debtors, to recognize the repeal of section 1087–3 before giving effect to either section 523(a)(8) of the BRA or the savings provision in section 403(a) would, it seems to us, effectuate a legislative mistake prejudical to the substantive rights of appellant.

The result of an obvious mistake should not be enforced, particularly when it "overrides common sense and evident statutory purpose." *United States v. Babcock*, 530 F.2d 1051, 1053 (D.C. Cir. 1976); *United States v. Brown*, 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948). It is a well established principle of statutory construction that a statute should not be applied strictly in accord with its literal meaning where to do so would pervert its manifest purpose.

*Adamo, supra*, 619 F.2d at 221–22. *Accord, Lipke, supra.*

This particular technical error by a Congressional committee is not the first error that courts have felt compelled to rectify in order to effectuate the clear and true purpose of Congress. In *Smythe v. Fiske*, 23 Wall. 374, 380, 90 L.Ed. 47 (1874), Justice Swayne commenced the opinion of the Supreme Court as follows: "A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. *The intention of the lawmaker is the law*." (Citation omitted; emphasis added.) In *Heydenfeldt v. Daney Gold and Silver Mining Co.*, 93 U.S. 634, 638, 639, 23 L.Ed. 995 (1876), the Court, in construing a statute in a fashion "seemingly contrary to the letter of the statute," explained:

If a literal interpretation of any part of it would operate unjustly, or lead to absurd results, or be contrary to the evident meaning of the act taken as a whole, it should be rejected.

In *Holy Trinity Church v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), the Supreme Court reviewed at length the applicable authority when literal construction of a statute led the Court to a result not intended by the legislature. The Court there examined the title of the act, the problem at which the act was directed, and the legislative history of the act, in ascertaining the intent of Congress. The Court concluded that under such circumstances,

> It is the duty of the courts ... to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute.

*Holy Trinity Church, supra*, 143 U.S. at 472, 12 S.Ct. at 516–17.

In *Hawaii v. Mankichi*, 190 U.S. 197, 212, 23 S.Ct. 787, 788, 47 L.Ed. 1016 (1903), the Supreme Court noted that "the books are full of authorities to the effect that the intention of the lawmaking power will prevail, even against the letter of the statute; ...."

Perhaps the strongest statement of the primacy of intent over statutory letter came in the case of *Takao Ozawa v. United States*, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922):

> It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the

---

**9.** In both *Adamo* and *Lipke*, the courts of appeal concluded that the applicable law is that in effect at the time the issue of dischargeability is decided. While the Bankruptcy Court decisions appealed here concluded, to the contrary, that the applicable law is that in effect on the date the bankruptcy petition is filed, that conclusion is not appealed here and will not be disturbed.

**1018**

matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.

To the same effect are the following cases: *Fleischmann Construction Co. v. United States*, 270 U.S. 349, 360, 46 S.Ct. 284, 289, 70 L.Ed. 624 (1926) ("The strict letter of an act must, however, yield to its evident spirit and purpose, when this is necessary to give effect to the intent of Congress. [Citations omitted.] And unjust or absurd consequences are, if possible, to be avoided."); *Sorrels v. United States*, 287 U.S. 435, 446, 53 S.Ct. 210, 214, 77 L.Ed. 413 (1932) ("Literal interpretation of statutes at the expense of the reason of the law and producing absurd consequences or flagrant injustice has frequently been condemned."); *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) (when the plain meaning of a statute "has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." [Citations omitted.]).

To the same effect are the opinions of Judge Learned Hand in *F.D.I.C. v. Tremaine*, 133 F.2d 827, 830 (2d Cir. 1943); *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir. 1944) (concurring opinion); and *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). *See also*

*Acheson v. Fujiko Furusho*, 212 F.2d 284, 295 (9th Cir. 1954).

■ Courts should be reluctant to do other than apply the law as passed by legislatures. But here, the Congressional error is clear; the error leads to an absurd "patchwork" scheme concerning the dischargeability in bankruptcy of student loan debts; Congress has expressed its displeasure with the gap and tried to close it; the defect is easily remedied by applying 20 U.S.C. § 1087–3 from November 6, 1978 until August 14, 1979; no substantive rights have attached during the hiatus;[10] and the result achieved by disregarding the words of the statute serves the policies adopted by Congress and which Congress intended to effectuate, far more than a "relentless literalism" would.[11] Under these circumstances, it is appropriate to disregard the repeal of 20 U.S.C. § 1087–3.

## VI. CONCLUSION

Accordingly, the judgments are REVERSED and REMANDED for determination whether appellees may be discharged, in full or in part, of their student loan debts under the provisions of 20 U.S.C. § 1087–3.

IT IS SO ORDERED.

---

**10.** "The cases are legion which hold that the discharge of a debt in bankruptcy is a privilege and not a right." *In re Packer; Packer v. Massachusetts Higher Education Assistance Corporation*, Slip Op. (D.Mass., April 17, 1980).

**11.** While this holding prevents appellees from securing automatic discharge, they may still be able to secure a discharge of their educational loan debts if they can show, on remand, undue hardship on themselves or their dependents. This holding well serves the policy behind such a restriction: "to prevent abuse of the bankruptcy laws by students petitioning for bankruptcy immediately upon graduation without attempting to realize the potential increased earning capacity which education may provide." *In re Adamo, supra*, 619 F.2d at 219–20.