Lyman H. Smith, J.
Plaintiff Brockport Developers, Inc. moves this court for relief under the Statute of Frauds (General Obligations Law, § 5-703, subd 1).
The corporate plaintiff (Brockport) has heretofore brought suit to foreclose its mortgage on realty owned by the corporate defendant (47 Ely). The real property is located in the Town of Sweden, Monroe County, New York.
47 Ely has interposed an affirmative defense and counterclaim to the foreclosure action, both grounded in Brockport’s alleged breach of warranty.
*311 Brockport’s motion seeks dismissal of defendant’s interposed affirmative defense and counterclaim (CPLR 3211, subd [b]; CPLR 3211, subd [a], par [5]) praying for relief from the purported warranty under the Statute of Frauds (General Obligations Law, § 5-703, subd 1). In the event such relief be granted, plaintiff prays for summary judgment in the underlying foreclosure action (CPLR 3211, subd [c]).
The pertinent events and documents essential to ultimate determination of the issues herein appear as follows:
On November 16, 1969, Brockport accepted an offer (dated November 14, 1969) of 49 Stone Corporation to purchase the afore-mentioned real property owned and partially developed by Brockport. Improvements previously completed by Brock-port included two apartment buildings with a total of 46 existing apartment units. The site also included six acres of vacant land available for further development. 49 Stone Corporation’s president and sole stockholder was, at that time, also the president and sole stockholder of the named defendant, 47 Ely Corporation.
The complete purchase contract (offer and acceptance), in excess of seven pages, was signed and executed by the corporate presidents of Brockport and 49 Stone. The usual items of concern involving transfers of existing apartment buildings and additional real estate suitable for similar further development were set forth in customary detail in the purchase contract, including, provisions for purchase price, mortgage financing, terminal provisions governing leases, lists and assignments of existing leaseholds, condition of the existing structures, certificates of occupancy, zoning, warranties as to utilities, brokerage commissions, closing date, closing adjustments and interim risks of loss.
The specific provision of the purchase contract, upon which the controversial pleadings rest, reads as follows: "Seller warrants (1) that there are storm and sanitary sewers and water available at the property line, (2) the Offerors or its assigns can tie in to and use said facilities (without any charge by any municipality or improvement district) for the apartment project to be erected on the vacant land (at the rate of 12 units per acre).”
On January 30, 1970, Brockport conveyed the subject realty to 47 Ely by warranty deed. 47 Ely simultaneously delivered its purchase money mortgage to Brockport in the amount of $130,000 — the exact mortgage principal provided for in the *312 earlier purchase contract executed by and between Brockport and 49 Stone.
Ostensibly, no lengthy and multi-provisioned purchase contract (offer and acceptance) existed between the closing parties (Brockport and 47 Ely). Nor did the deed itself refer to any prior negotiations or agreements between these two parties. However, it is undisputed that execution and delivery of the deed, delivery and acceptance of 47 Ely’s purchase money mortgage and the closing itself took place within the timetable fixed in paragraph 6 of the Brockport-49 Stone purchase contract. The closing followed in precise detail the Brockport49 Stone purchase contract as to all provisions concerning pro-ration of taxes, fire insurance premiums, utility bills, assignment of leases, pro-ration of rents and, indeed, all the pertinent and specific details applicable to a closing of such magnitude.
Upon the closing (January 30, 1970) the grantor, Brockport, delivered to the grantee, 47 Ely, over the signature of Brock-port’s president (Harry J. Sentiff) an affidavit affirming, inter alia, Brockport’s warranty to the effect that "sanitary sewer lines, water and other utilities are available without charge by any municipality on the site for the additional construction proposed by you”.
On June 11, 1970, Brockport commenced the present foreclosure action against 47 Ely.
47 Ely served an amended answer and counterclaim, by leave of the court,[1] affirmatively alleging oral assignment of the purchase contract from 49 Stone to 47 Ely and, specifically, a breach by Brockport of its warranty therein to the effect that the purchaser would not be liable for sewer and water tie-in charges on the subject realty;
The parties to this motion do not dispute that 47 Ely has paid the entire mortgage principal and interest. All that remains at issue in the foreclosure action is the sum of approximately $19,000, representing sewer and water tie-in costs which, apparently, have been charged to 47 Ely and which presently remain unpaid.
Both parties agree that there was no written assignment, per se, of the purchase contract from 49 Stone to 47 Ely. There is no dispute that the president and sole stockholder of both 49 Stone and 47 Ely (Myron S. Silver) indicated on the *313 closing date that title to the subject property would be taken by 47 Ely, not 49 Stone.[2]
The defendant (47 Ely) conceded upon argument of the instant motion that such was, in fact, an oral assignment, executed wholly by the will and pursuant to the direction of the common president and sole stockholder of 49 Stone and 47 Ely — as assignor and assignee. Accordingly, argues Brockport, the oral assignment, since it affects an interest in real property, violates New York’s Statute of Frauds and is unenforceable. Conversely, 47 Ely asserts several reasons why the statute would not apply to the instant situation. The question is: what effect, if any, does the Statute of Frauds have upon the situation?
New York’s Statute of Frauds (General Obligations Law, § 5-703, subd 1) provides: "An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing.”
These provisions are generally held to apply where a party, having contracted to purchase real property, assigns his interest therein to another purchaser. (56 NY Jur, Statute of Frauds, § 113.)
Thus, historically early decisions speak in rigid terms. "A contract void by the statute is void for all purposes. It confers no right and creates no obligation as between the parties to it; and no claim can be founded upon it as against third persons. It cannot be enforced directly or indirectly. The plain intent of the statute is that no person shall be subjected to any liability upon an agreement [barred by the Statute of Frauds] * * * and that no right as against third persons can be built upon or be upheld by it.” (Dung v Parker, 52 NY 494, 496-497; see, also, Kenlon v Corbin, 268 App Div 318.)
However, by decisional law of later vintage, the availability of pleading the Statute of Frauds has been limited to only *314 those parties to the oral contract sought to be enforced, their privies and successors in interest. (See 56 NY Jur, Statute of Frauds, § 337.) The statute is not generally available to a third-party stranger to the oral contract (56 NY Jur, Statute of Frauds, § 339). The bar of the statute has been characterized as "a shield and not a sword” (Kaminsky v Abrams, 51 Misc 2d 5, 7) and a personal defense available to either party to the oral contract should they see fit (Stitt v Ward, 142 App Div 626), but not available to a third party or a stranger to the otherwise voidable agreement (Kaminsky v Abrams, supra). Similarly, it is universally conceded that the doctrine of equitable estoppel may be invoked to preclude attack upon a voidable oral agreement when to permit the same would open the door to unjust enrichment or irreparable injury (Donahue v Manufacturers Trust Co., 10 Misc 2d 298) or when one of the parties, in reliance upon the oral agreement, has performed to his detriment his part of the bargain (La Rosa v Matthews, 28 Misc 2d 929).
Viewed in the light of the foregoing decisional principles, the affidavits and documents submitted by both sides on the motion herein establish, prima facie, substantial, albeit, partial performance of an otherwise unenforceable oral contract and acceptance thereof by the party now raising the Statute of Frauds. (Cf. Kaminsky v Abrams, supra; Atmanchuck v Sterling Forest Corp., 35 Misc 2d 424.) There is no dispute that Brockport executed and delivered its warranty deed to 47 Ely. It is conceded that 47 Ely took possession of the premises and paid the entire purchase money mortgage principal, with interest, precisely according to the terms of the purchase contract between Brockport and 49 Stone (November 16, 1969).
While the assignment of the written contract from 49 Stone to 47 Ely may indeed be a legal fiction, voidable under the Statute of Frauds, nevertheless, the conclusion is inescapable that Brockport knowingly and intentionally acquiesced in this transfer by allowing the closing to take place in the name of 47 Ely. Indeed, the documents submitted here clearly indicate that Brockport confirmed the assignment of the underlying purchase contract from 49 Stone to 47 Ely by delivery of its deed, assignment of rents and acceptance of 47 Ely’s purchase money mortgage. Upon the closing, Brockport apparently recognized the unity and continuity of the corporate interests of 49 Stone and 47 Ely. Brockport treated 49 Stone and 47 Ely *315 as one. Apparently, they were one as far as Brockport was concerned. Sometimes there is no surer way to find out what the parties meant or what they agreed to do than to see what they have done.
The affidavit of 47 Ely’s president that the closing conformed, in all respects, to the written purchase contract (except that the vendee’s name was changed) and that Brock-port did not object to the substitution of 47 Ely on the deed, have gone uncontroverted.
The wording of the affidavit of Brockport’s president, delivered to 47 Ely at the time of closing, gives rise to the strongest presumption that Brockport was aware of and accepted 49 Stone’s assignment to 47 Ely. Paragraph 4 of the affidavit of Brockport’s president (Harry J. Sentiff) states, “That the corporation interest in said apartments has not been deeded, leased or assigned other than the mortgage referred to in the purchase offer. ” (Emphasis supplied.) From that reference to the “purchase offer” one may reasonably conclude that Brock-port’s president was referring to 49 Stone’s written purchase offer, dated November 14, 1969, which offer Brockport accepted on November 16, 1969. Paragraphs ”5” and “6” of the same affidavit are equally revealing. Paragraph ”5” reads, “That there are no leases other than those submitted to you, containing no renewal options.” (Emphasis supplied.) Paragraph “6” reads, “That the sanitary sewer lines, water and other utilities are available without charge by any municipality on the site for the additional construction proposed by you and do not interfere with such additional construction on the site.” (Emphasis supplied.) That the affidavit was delivered to 47 Ely simultaneously with delivery of the deed to the same corporation and that its delivery was coincident with complete performance of all the other formalities of closing, raises an equally strong inference that the affidavit itself was a memorandum of the acceptance of the “assignment” of the purchase contract from "49 Stone to 47 Ely. Similarly, the affidavit is significant evidence that the president of Brockport (Sentiff) recognized 47 Ely (upon the closing) as the grantee of the premises. However, there are issues which must be left to the trial court.
Suffice it to say, equity will not countenance a ritualistic invocation of the Statute of Frauds, especially where the party claiming its protection has acquiesced in and profited from the very agreement it now seeks to abjure. (See McKay Prods. v *316 Logan, Inc., 54 Misc 2d 385.) For the following reasons this court is satisfied that the "oral assignment”, so called, should be available to the defendant, 47 Ely, upon the trial of the underlying foreclosure action:
First, the warranty provisions of the above identified purchase contract expressly extend to the "Offerors or its assigns”. (Emphasis supplied.)
Second, it has long been recognized that "an assignee takes the subject of the assignment wdth all the rights possessed by the assignor”. (3 NY Jur, "Assignments”, § 58.)
Third, while it is a fundamental rule of law that prior negotiations and agreements affecting realty become merged in the deed and do not survive the closing, that rule is, however, subject to a contrary intention of the parties. Where continuing duties are established in the purchase contract which cannot be performed on or before the closing, but which will outlive the consummation of the sale, such conditions are not extinguished by delivery and acceptance of the deed. (See Kellogg v De Pasquale, 42 AD2d 667; Staff v Lido Dunes, Inc., 47 Misc 2d 322.)
Fourth, the written purchase agreement here expressly states that, "Seller’s representations and warranties shall be true at the time of closing as though such representations and warranties were made at such time and shall survive the closing(Emphasis supplied.) The intention of the parties that the warranty provisions would, indeed, survive the closing could hardly be better expressed.
This court has not been called upon to interpret the written purchase contract and opine on Brockport’s current liabilities, if any, to 47 Ely under such document. The court is satisfied that, at this point (pre-trial), equity will not permit Brockport to use the Statute of Frauds as a shield, when to do so would permit Brockport to pick and choose such provisions of the purchase contract that would satisfy its primary obligations, such as delivery of the deed, assigning of leaseholds, etc. and, at the same time, avoid obligations previously made and without which the deed would not have been accepted, nor the purchase money mortgage delivered to plaintiff Brockport.
It is, therefore, the decision of this court that 47 Ely shall not, as a matter of law, be precluded from offering proof of the afore-mentioned purchase contract between Brockport and 49 Stone, both in its affirmative defense and its counterclaim, upon the trial of the underlying foreclosure action.
*317 Accordingly, Brockport’s motions to dismiss both 47 Ely’s affirmative defense and its counterclaim are hereby denied in all respects.

. Order, Special Term, Monroe County, March 18,1975, Brisco, J. presiding.

. Substitutions of one grantee for another upon the date of closing is not an uncommon occurrence, particularly when the substituted grantee has either a joint or an otherwise like identity of interest with the substituted grantee-purchaser and either or both are acceptable to the grantor.