GRACIE TOWER REALTY ASSOCIATES, Petitioner, v DANOS FLO-
RAL Co., INC., Respondent.

Civil Court of the City of New York, New York County, February 7, 1989

## APPEARANCES OF COUNSEL

*Rosenberg & Estis* for petitioner. *Richard E. Bauman* for
respondent.

## OPINION OF THE COURT

ALICE SCHLESINGER, J.

Petitioner brought a seemingly straightforward holdover
action against respondent alleging that the tenant Danos
Floral Co. had remained on the subject premises past their
lease term of December 31, 1987 without permission. Respon-
dent, however, asserted as affirmative defenses that it had

entered into a new lease commencing January 1, 1988 through December 31, 1989 with the managing agent of the premises authorized to do this.

At the trial the facts were basically not in dispute. First, Leib Waldman, general partner of Gracie Tower Realty Associates, testified. He made out petitioner's prima facie case. However, he conceded on cross-examination that this property, as well as others owned by Gracie Tower, were the subject of proceedings to appoint a receiver brought on by Freiesch Groningsche Hypotheek Bank, mortgagee against them as mortgagor in late 1986. To Waldman's knowledge a receiver had been appointed whose name was Irving Kahn. The signed order of appointment was then placed into evidence.

Waldman testified further that sometime in April of 1988, via a chapter 11 proceeding in the United States District Court for the Southern District, he regained possession of the premises as a "debtor in possession". He has brought these proceedings in both capacities "owner and debtor in possession".

Respondent's case consisted of the testimony of George Comadas, president of Danos, Greg Maloof, managing agent of the premises from May 1987 through May 31, 1988, and Irwin Kahn, court-appointed receiver. Documents consisting of rent statement, rent checks, and a May 1, 1987 letter from Kahn to respondent introducing himself and Maloof were also placed in evidence.

Maloof and Kahn corroborated each other's account as to the former's responsibility as regards the renewal of leases. The Supreme Court order had limited the term of new leases to two years and Maloof stated he was aware of and acted within these parameters.

They both stated that after meetings with officials and attorneys for the bank mortgagee it was decided that a major objective was keeping the premises fully occupied so that the cash flow would remain level and consistent.

Kahn thus gave Maloof instructions along these lines as well as directing that he attempt to get the most favorable lease terms.

Both men agreed that Maloof was authorized to enter into lease renewals with current tenants but that such authority was not formally put in writing. Finally, Kahn testified credibly that after this particular lease was entered into it was

brought to his attention. Although he did not explicitly ratify the lease, it is apparent that the renewal was in accordance with his previous directives to Maloof.

George Comadas and Maloof essentially corroborated each other as to the negotiations for and actual signing of the renewal. The rent under the expiring lease was $2,750 per month and was raised to $2,887.50 in the first year and a 5% increase for the second and final year. However, the lease did not provide for respondent to pay escalations as was the case under the old lease, nor was clause No. 31 regarding security in the new lease filled in. Under these same clauses in the old lease respondent had deposited $5,000 with the landlord. This amount is the subject of respondent's first counterclaim.

In closing petitioner made two arguments. First, he questioned Kahn's authority to enter into a renewal lease. However, that authority was explicitly given to Kahn by the Supreme Court and therefore bears no further discussion.

Petitioner's second (and major) argument was that the lease is voidable under the Statute of Frauds. Section 5-703 (1) of the General Obligations Law requires that an agent's authority to execute a renewal lease exceeding the term of one year must be in writing. Since it is uncontested that Kahn failed to provide Maloof with written authority to enter a renewal lease, Gracie Tower may void the lease.

Respondent's position is that Gracie Tower lacks standing to raise the Statute of Frauds. Maloof had Kahn's oral authority to enter into a renewal lease with respondent. Since Gracie Tower is not a party to this oral agreement, but rather "a third-party stranger to the oral contract" it may not as a matter of law interpose the Statute of Frauds *(Brockport Developers v 47 Ely Corp.,* 82 Misc 2d 310, 314 [Sup Ct, Monroe County 1975]; *Brooklyn Union Gas Co. v MacGregor's Custom Coach,* 122 Misc 2d 287 [Civ Ct, Kings County 1983]; *Kaminsky v Abrams,* 51 Misc 2d 5 [Sup Ct, NY County 1965]).

Petitioner contends that the Statute of Frauds may be raised by the parties to the contract as well as "their privies and successors in interest" *(Brockport Developers v 47 Ely Corp., supra,* at 314). In 1988, during the course of the bankruptcy proceeding, Gracie Tower regained control and management of the property from the receiver. Thus, Gracie Tower is the successor in interest[1] to the receiver and as such may assert the Statute of Frauds.

---

1. Petitioner relies upon the following definition of successor in interest:

The issue of apparent first impression before this court is whether petitioner is the receiver's successor in interest who may raise the Statute of Frauds to avoid the lease.

In order to answer this question, the powers and duties of a receiver must be examined.

Generally, a temporary receiver in a foreclosure matter is appointed for the preservation and operation of the property *(Cobb v Sweet,* 46 App Div 375 [3d Dept 1899]; 49 NY Jur, Receivers, § 1, at 113). However title does not pass to him and remains with the owner of the property *(Cobb v Sweet, supra).* The receiver does not possess legal powers other than what is conferred by the court ordering the appointment *(Decker v Gardner,* 124 NY 334 [1891]). The receiver is an officer of the court, subject at all times to its direction and control *(Alexander v Valumet Chocolate Co.,* 240 App Div 769 [2d Dept 1933]) and acts merely as the court's custodian or agent *(Cohen v Sherman,* 279 App Div 939 [2d Dept 1952]). While the receiver is a fiduciary and owes a duty to protect the property for the benefit of all the interested parties *(Cohen v Hechtman,* 187 Misc 994 [Sup Ct, NY County 1946]; *In re Stoll-Meyer Woodcrafters,* 84 NYS2d 757 [Sup Ct, Kings County 1948]) he is not the agent of the mortgagee or of the owner of the equity *(Knickerbocker Ice Co. v Benson,* 155 Misc 738 [NY City Mun Ct, Borough of Manhattan, 1st Dist 1935]).

The receiver's rights in the property may be contrasted to the rights of an owner holding the property in fee simple absolute. The latter holds title, the right to possession, the right to use the land for any lawful purpose, and most important, the right to alienate or transfer the property. *(See generally,* 1 Rasch, Real Property Law and Practice §§ 27-38; 56 NY Jur 2d, Estates, Powers, and Restraints on Alienation, §§ 4, 5.)

In the case at bar, Kahn was appointed receiver during the pendency of the foreclosure action. Title never passed to him and his authority was limited by Justice Baer's order. He was directed to carry out management functions: to collect all

---

"In order to be a 'successor-in-interest', a party must continue to retain the same rights as the original owner without a change in ownership. There must be change in form only and not in substance." *(City of New York v Turnpike Dev. Corp.,* 36 Misc 2d 704, 706 [Sup Ct, Kings County 1962].)

Therefore, where presumably there has been a change in form as well as substance, the new party is a transferee instead of a successor in interest.

rents; institute legal proceedings including summary proceedings; rent or lease premises for terms not exceeding two years; keep the building insured; make repairs; pay taxes; and employ a managing agent. Thus Kahn's narrow function was to preserve and protect the property as the custodian of the court during his tenure.

The transfer of the administrative duties (i.e., collection of rent, etc.) from the Receiver Kahn to Gracie Tower marked a change in form, of course. However, there was also a change in substance as petitioner obtained far greater rights than the receiver ever had. Gracie Tower, subject to the bankruptcy law, resumed control consistent with ownership. Gracie Tower, while generally bound by the acts of the receiver authorized by the order of appointment, was not limited in its powers to those enumerated acts. Nor was it acting as an arm of the court to protect the property of another. Rather Gracie Tower was acting in its own interest, as owner and debtor in possession, to pay its creditors, save the property from foreclosure, and enjoy the fruits of ownership.

Accordingly, the court holds that under these circumstances Gracie Tower is not the receiver's successor in interest (cf., Fiske v Fiske, 95 AD2d 929 [3d Dept 1983]) but rather a mere transferee who prior to the transfer had been enjoined "from interfering in any manner with the property or its possession". Under these circumstances, Gracie Tower, as a stranger to the oral contract between Kahn and Maloof, lacks standing to raise the Statute of Frauds to disavow respondent's lease which Maloof was authorized to enter into.[2]

In view of the above the holdover petition is dismissed.

Respondent's first counterclaim seeking recovery of the $5,000 (plus interest) security deposit given to the landlord under the old lease is granted. The new lease does not provide for a security deposit. Since petitioner failed to address this counterclaim either legally or factually the court finds in favor of respondent and directs petitioner to return this deposit in accordance with applicable law.

---

2. At oral argument petitioner advanced a reliance argument under *Siegel v Kentucky Fried Chicken* (108 AD2d 218, affd 67 NY2d 792) and its progeny to support its position that a lease entered into by an agent without written authority may be voided. This line of cases has no bearing on the factual and legal issues here as these cases stand for the proposition that a tenant is entitled to know " 'with safety' * * * whether the notice to terminate emanates from a person with the requisite authority, for if he acts upon such notice to vacate the premises, he may later be found to have acted at his peril" *(supra, at 222).*

Respondent's second counterclaim seeking attorney's fees is denied. As a general rule attorneys' fees may not be recovered by the prevailing party unless authorized by agreement or by statute *(Matter of A. G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1; *Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12). In the case at bar the lease allows only the landlord the right to receive attorneys' fees. The implied reciprocal covenant for recovery of attorneys' fees by a tenant, under section 234 of the Real Property Law has no application here as this proceeding arises out of a lease for commercial property.