Diane F. KESSENICH, Plaintiff,

v.

Jeanne RAYNOR, Raynor Country Day School, Inc., Raynor Country Day School, Jeanne's Junior Jungle, Inc., John Adam Kanas and Patricia Blake, Defendants.

No. 99CV1253(NGG)(WDW).

United States District Court, E.D. New York.

Oct. 15, 2001.

Michael P. Manning, New York City, for Plaintiff.

Eric J. Bressler, Wickham, Wickham & Bressler, P.C., Melville, NY, for Defendants.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Defendant Jeanne Raynor ("Raynor") moves for summary judgment, pursuant to Fed.R.Civ.P. 56(b), against Plaintiff Diane Kessenich ("Kessenich") on the first claim in the Amended Complaint. For the rea-

sons discussed below, Raynor's motion is denied.

## FACTUAL BACKGROUND

The facts of this case were set out in extensive detail in this court's earlier decision on the motion of defendants Kanas, Blake, Jeanne's Junior Jungle, Inc., and Raynor Country Day School to dismiss. *See Kessenich v. Raynor*, 120 F.Supp.2d 242 (E.D.N.Y.2000). Without repeating this factual background in full, following is a summary of those facts pertinent to Raynor's current motion for summary judgment on the first claim, with all ambiguities and inferences resolved in favor of Kessenich, the non-moving party.

On or about September 26, 1994, Kessenich pledged a $50,000 certificate of deposit to European American Bank ("EAB"). The $50,000 was pledged in connection with a line of credit extended to Jeannes' Junior Jungle Inc. ("JJJ") that Raynor guaranteed. (Kessenich Affidavit in Support of Cross–Motion for Summ.J. ("Kessenich Aff.") ¶ 11.) By notice dated November 10, 1994, the Internal Revenue Service issued a levy on JJJ's bank account at EAB, and Raynor asked Kessenich to furnish collateral to EAB "in an amount sufficient for Raynor to obtain a loan from EAB to discharge the levy." (Am. Verified Compl. ("Am.Compl.") ¶¶ 16–17.) On or about December 5, 1994, Kessenich temporarily pledged a $25,000 EAB certificate of deposit, creating a $24,976.79 line of credit (the "EAB Credit Line"), and the levy was discharged with funds loaned to Raynor pursuant to that credit line. (*Id.* ¶¶ 18–19.) In late August 1995, Kessenich substituted a zero coupon municipal bond (the "Bond Collateral") as collateral in place of the two certificates of deposit for the $50,000 and the $24,976.79 lines of credit. (Pl. Statement Pursuant to Rule 56.1(b) in Opposition to Def.'s Motion for Summ.J. ("56.1(b) statement") ¶ 1(E).)

In February 1997, subsequent to the above transactions, Raynor and JJJ obtained an increase to $90,000 on the EAB Credit Line (the "Increased EAB Credit Line") by representing to EAB that Kessenich had approved the application of the Bond Collateral to the Increased EAB Credit Line, despite the fact that Kessenich had not approved such an application. Raynor and JJJ later defaulted on the original EAB Credit Line and the Increased EAB Credit Line. In December 1998 and January 1999, Raynor and JJJ falsely represented to EAB that Kessenich had approved the liquidation of the Bond Collateral to satisfy Raynor's balance on the Increased EAB Credit Line. In January 1999, EAB liquidated the Bond Collateral, which resulted in proceeds of $137,042.10. Of that amount, $66,649.10 was paid in satisfaction of Raynor's obligation to EAB and $70,393.00 was returned to Kessenich. (Am.Compl.¶¶ 50–55.) These facts provide the basis for the first claim of the Amended Complaint, which alleges that "Raynor owes Kessenich $66,649.10 for money lent pursuant to the EAB Credit Line and/or the Increased EAB Credit Line plus interest." (Amend. Compl.¶ 55.)

## PROCEDURAL HISTORY

Prior to the instant motion, defendants moved to dismiss the Amended Complaint and Kessenich cross moved for partial summary judgment on several claims. This court granted in part and denied in part the motion to dismiss. Kessenich's cross-motion was granted in part, but denied as to the first claim. The underlying theory of the first claim, as argued in Kessenich's cross-motion, was based on a principal-surety relationship between Kessenich and Raynor. (Pl.'s Mem. of Law in Support of Cross–Motion for Summ.J. on First, Third through Seventh, Eighth and Ninth Claims of Am.Compl.

("Pl.'s Cross–Motion") at 14–15.) Kessenich alleged that because she "furnished collateral in an amount sufficient for Raynor to obtain two loans from European Amercian Bank ('EAB') in September and December 1994," Kessenich was a surety and Raynor the principal obligor for the money that EAB lent to Raynor and JJJ. As such, Kessenich argued that she was entitled to indemnity for the principal obligor's default. (*Id.*)

Kessenich offered little more than the foregoing conclusory statements to support her claim of surety status. On review of those assertions, this court found that while there existed no dispute as to the material facts relating to Raynor's default and the liquidation of Kessenich's Bond Collateral, Kessenich had failed to show that she was entitled to judgment as a matter of law. 120 F.Supp.2d at 249. Raynor now moves for summary judgment, arguing that on the same set of facts this court should find as a matter of law that no suretyship relationship existed.

## DISCUSSION

### Summary Judgment Standard

Summary judgment must be entered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and . . . the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir.1999) (quoting *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995)). Only after the moving party has carried this initial burden, does the burden shift to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)). *See also Kessenich,* 120 F.Supp.2d at 247–248 (discussing standard for summary judgment and denying Kessenich's earlier cross-motion for summary judgment on this same claim).

### Creation of Suretyship Status

■ Raynor's motion for summary judgment argues that Kessenich cannot demonstrate suretyship status as a matter of law.[1] In so doing, Raynor primarily relies on the New York Statute of Frauds, N.Y.GEN.OBLIG.LAW § 5–701, arguing that it constitutes as a complete bar to Kessenich's claim. Raynor's sole argument is that "[a]ny suretyship must be in writing to be enforceable." (Def.Mem. of Law at 2.) While the New York Statute of Frauds does require "a special promise to answer for the debt, default or miscarriage of another" to be in writing, *see* N.Y.GEN.

---

1. Raynor also argues that Kessenich's first claim is pleaded as one in money lent, and thus does not properly assert a suretyship claim. To the extent the first claim is interpreted as one for money lent, Raynor asserts that it must be dismissed because this court's earlier holding determined that "there was no lending relationship between plaintiff and Raynor." (Def. Raynor's Mem. of Law in Support of Motion for Summ.J. ("Def.Mem. of Law") at 1.) This court's decision made no such conclusion, and Defendant points to no words or discussion that could be interpreted as such. As discussed *infra,* this court only concluded that Plaintiff had not established a suretyship relationship as a matter of law. Moreover, there is no merit in Defendant's overly-narrow reading of the first claim. The language of the first claim plainly indicates that the money lent was from EAB to Raynor. Kessenich's theory of remedy is based on her status as a surety to that lending arrangement. Thus, this court interprets the first claim to adequately invoke those remedies available under principles of suretyship.

OBLIG.LAW § 5–701(a)(2) (McKinney's 2001), this does not require, as Raynor assumes, that the status of suretyship itself must be established in writing. Raynor's argument fails to distinguish surety by express contract, which falls within the Statute of Frauds, from suretyship by operation of law, which does not. *See* 63 N.Y.JUR.2D *GUARANTY AND SURETYSHIP* § 24 (1987) (noting that New York follows general rule that "a contract of suretyship must be in writing, *unless arising by operation of law*") (emphasis added). Thus, suretyship can arise by operation of law, despite the absence of a written contract. In such cases, the Statute of Frauds is not an automatic bar. Where suretyship arises by operation of law, only the underlying financial guarantees and contracts, which constitute the promise to answer for the debt of another, would be subject to the Statute of Frauds.

New York State's highest court has recognized the rights of suretyship status that arise by operation of law in the absence of an explicit surety contract. *See Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 690 N.Y.S.2d 489, 712 N.E.2d 656 (N.Y.1999). In *Chemical Bank*, the Appellate Court held that Meltzer, one of two guarantors of a bond purchase agreement between Chemical Bank and a third-party, IDA, was entitled to surety status. The court rejected the argument that because Meltzer had only signed a guaranty that did not "distinguish among the three guarantors in the transaction . . . his status as a surety was 'simply not supported by the [guaranty that he] signed.'" *Id.* at 302, 690 N.Y.S.2d 489, 712 N.E.2d 656. Instead, the court looked to the "substance of the entire transaction, rather than its form" to determine if the respective roles of the parties and the nature of the underlying transaction established the existence of suretyship status. *Id.* at 302–03, 690 N.Y.S.2d 489, 712 N.E.2d 656; *see also* 63

N.Y.JUR.2D *GUARANTY AND SURETYSHIP* § 21 (1987) ("The relationship of principal and surety need not arise through express contract. It may be involuntary, arising from circumstances and even be unknown to the obligor. A suretyship by operation of law results where a debtor's obligation has been assumed by someone else."); 74 AM. JUR.2D *SURETYSHIP* § 8 (1974) ("The relation of suretyship, although it generally is created by express contract of the parties and with the consent of the creditor, may nevertheless arise by operation of law.").

■ Because a court presented with a claim of suretyship by operation of law looks to "the underlying transaction" in its entirety, the enforceability of any alleged contracts or agreements remains relevant to such a claim. In turn, whether or not underlying transactions fall within the Statute of Frauds and comply with its requirements remains at issue. Raynor, however, does not dispute the validity of the underlying transactions or claim that they fail to conform with the Statute of Frauds. Further, Kessenich has come forward with evidence of specific transactions which are enforceable and taken as a whole adequately support her claim of suretyship by operation of law. As required by New York's Statute of Frauds, Plaintiff's promise to answer for the $24,976.79 debt of Raynor is "in writing" and "subscribed by [Kessenich and Raynor] the part[ies] to be charged." N.Y.GEN.OBLIG.LAW § 5–701(a)(2); (Kessenich Aff.Ex. F, Hypothecation Agreement signed by Kessenich and Raynor; Ex. G, Installment Loan Note and Security Agreement signed by Kessenich and Raynor.). Similarly, Raynor's promise to guarantee the $90,000 line of credit to JJJ is in writing and signed by Raynor. (Kessenich Aff.Ex X, Business Credit Account Agreement for $90,000 line of credit

to JJJ, with Raynor's signature as guarantor.)

Finally, Kessenich alleges that her pledge of the $50,000 collateral was induced by Raynor's oral promise to indemnify Kessenich, and as such was not a contract to answer for the debt of another. As a promise of indemnity, it is not necessarily subject to the Statute of Frauds and need not be in writing to be enforceable. *See Barclays Bank of New York v. Goldman,* 517 F.Supp. 403, 414 (S.D.N.Y.1981) (holding that under clearly established New York law a promise by one person to indemnify another for becoming a guarantor for a third person is not within the statute of frauds); *In re Naramore,* 3 B.R. 709, 714 (N.D.N.Y.1980) (noting oral promise to indemnify another for becoming guarantor for third person is not within Statute of Frauds and need not be in writing); *Marcus v. Fabrikant,* 34 Misc.2d 945, 229 N.Y.S.2d 304, 306 (N.Y.Sup.Ct. 1962) ("If the agreement was simply an undertaking to pledge collateral, it was not a 'special promise to answer for the debt, default or miscarriage of another person' "); *see also* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 11(3)(d) (1996) ("A promise to indemnify against liability or loss made by the principal obligor or any other person to induce the secondary obligor to enter into the secondary obligation is not within the Statute of Frauds as a contract to answer for the duty of another.").

For the reasons discussed herein, the above facts and allegations adequately support a claim of suretyship by operation of law. To the extent some of these underlying transactions are subject to the Statute of Frauds, Kessenich has demonstrated that they conform with the requirement of a signed writing. Thus, for the purposes of this summary judgment motion, Raynor's Statute of Fraud defense fails to defeat Kessenich's claim of suretyship.

### Raynor's Reliance on This Court's Earlier Opinion

In further support of her motion, Raynor relies on this court's decision denying Kessenich summary judgment on her suretyship claim. (Def.Memo. of Law at 2–3.) In so doing, Defendant attempts to extend this court's earlier opinion beyond its limited scope.

This court found *for the purpose of summary judgment* that Kessenich had not established that there was a suretyship relationship. 120 F.Supp.2d at 250. As already discussed, Kessenich offered only a conclusory argument for suretyship status. (Pl.'s Cross–Motion at 14 citing 63 N.Y.JUR.2D GUARANTY AND SURETYSHIP § 5 which defines suretyship by contract). Kessenich did not articulate, as she does now, a theory of suretyship by operation of law. Thus, this court interpreted Kessenich's argument to rest on a traditional theory of suretyship by express contract. It was in this context that this court, citing the New York Statute of Frauds, noted "suretyship *contracts* must be in writing" and concluded that Kessenich had not proven surety by contract as a matter of law. 120 F.Supp.2d at 250 (emphasis added). The denial of summary judgment for Kessenich did not even reach the issue of a suretyship by operation of law. In contrast, Kessenich's memorandum of law in opposition to Raynor's motion for summary judgment presents sufficient facts and legal support for this court to find the existence of a genuine factual issue regarding surety status arising by operation of law.[2] Therefore, this court's previous refusal to grant Kessenich summary judgment and the accompanying rationale,

---

**2.** The fact that Kessenich failed to adequately present her theory of suretyship status by operation of law, for the purposes of obtaining summary judgment does not prevent her

which was based on the law of suretyship contracts, does not lend support to Raynor's current reliance on the Statute of Frauds.

## CONCLUSION

Plaintiff argues that her surety status and accompanying right to relief evolve from a combination of transactions, not from a suretyship contract. Raynor, as the moving party, has failed to offer any argument as to why the facts alleged by Kessenich cannot support a claim of suretyship by operation of law. Further, any relief to which Kessenich may be entitled hinges on issues of fact that remain in dispute, including whether Kessenich is a subsurety or cosurety, and whether or not she can obtain restitution from Raynor or subrogation to the rights of EAB.[3] *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY §§ 26–28 (1996) (discussing grounds for restitution and subrogation); *see also Chemical Bank*, 93 N.Y.2d at 304, 690 N.Y.S.2d 489, 712 N.E.2d 656 (citing Restatement in discussing surety's right of subrogation). For the purposes of summary judgment, Raynor has not demonstrated that as a matter of law it is impossible for Kessenich to recover under any of these suretyship remedies. Accordingly, summary judgment on the first claim of the Amended Complaint is DENIED.

SO ORDERED.

---

from relying on that theory to rebut Raynor's motion for summary judgment. In the instant motion, Kessenich is no longer the moving party and no longer carries the burden, thus she only need demonstrate that there remains a genuine factual dispute with regard to the creation of suretyship status.

3. Raynor's Reply Memorandum of law asserts that if this court were to find a surety relationship did exist, then Raynor not Kessenich is the subsurety, or alternatively if they are cosureties Kessenich's claim as plead cannot be sustained. (Def. Raynor's Reply Mem. of Law in Support of Motion for Summ.J. at 3.) Raynor's statements are conclusory and make no attempt to demonstrate by way of fact or law that these issues need be decided as a matter of law for the purposes of this summary judgment decision.